**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Stephen Bryant BORRELLI,**
**Defendant-Appellant.**

**No. 79–1133.**

United States Court of Appeals,
Tenth Circuit.

Argued Feb. 14, 1980.
Decided June 4, 1980.

Daniel J. Sears, Federal Public Defender, Michael G. Katz, Asst. Federal Public Defender, Denver, Colo., for defendant-appellant.

Joseph F. Dolan, U.S. Atty., Susan R. Roberts, Asst. U.S. Atty., Denver, Colo., for plaintiff-appellee.

Before SETH, Chief Judge, and HOLLOWAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir. R. 10(e). The cause is therefore ordered submitted without oral argument.

Stephen Bryant Borrelli was tried and convicted of bank robbery under 18 U.S.C. §§ 2 and 2113(a). On appeal, Borrelli contends that the trial court erred in (1) admitting evidence obtained as a result of his arrest by state police officers for aiding an escapee, (2) admitting the testimony of Borrelli's stepfather regarding the similar appearance of Borrelli and the person depicted in surveillance photographs of the bank robbery, and (3) permitting the bank employees to identify Borrelli through an impermissibly suggestive photo array. These contentions are without merit, and we affirm the conviction.

During its investigation of a grocery store robbery, the police in Englewood, Colorado received a tip that the perpetrators were residing in a certain apartment. Upon police inquiry, the manager of the apartment complex said that the lessee was Borrelli. City and county police subsequently conducted a surveillance of the area and observed two men coming and going from the apartment. To ascertain their identity, the police directed a traffic stop of a vehicle in which the two men were traveling. During this stop, Borrelli correctly identified himself, but the other man provided the officers with a false name.

When the police subsequently determined that the second man was Gregory Thorpe, an escaped convict from state prison, Borrelli was arrested for the state offense of "aiding an escapee." While Borrelli was in custody, the police photographed him and then questioned him regarding the escaped prisoner and his possible participation in the grocery store robbery. The police also questioned Borrelli regarding an armed robbery that had recently occurred at the Empire Savings and Loan Bank. After Borrelli was released, the police noticed a similarity between Borrelli's arrest photograph and the person depicted in the surveillance photographs taken during the bank robbery. A photographic array which included Borrelli's photograph was shown to bank employees. When two tellers positively identified Borrelli as one of the robbers, the F.B.I. arrested him for the bank robbery.

## I.

Borrelli first contends that evidence obtained as a result of his arrest for aiding an escapee is inadmissible because it was impermissibly based upon information obtained as a result of an unlawful "traffic stop." Therefore, he argues that the arrest photograph and various statements made to the police incident to the arrest should be suppressed. We disagree.

■ Since the traffic stop was made by state officers investigating a state offense, Colorado law governs the lawfulness of the traffic stop subject to the requirements of the Fourth Amendment. *United States v. Lepinski*, 460 F.2d 234 (10th Cir. 1972). A limited stop for the purpose of identifying a person does not violate the Fourth Amendment where the officer reasonably suspects that the person has committed a crime. *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971).[1] And *see Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Reasonable suspicion may be based on information supplied by an informant. *People v. Mathis*, 189 Colo. 534, 542 P.2d 1296 (1975); *People v. Lucero*, 182 Colo. 39, 511 P.2d 468 (1973).

■ In this case, an informant who resided at the same apartment complex as Borrelli had told the police that the residents of apartment 228 were responsible for the grocery store robbery. At that point, it was the duty of the police to establish the identity of those men. Accordingly, we believe that the traffic stop solely for that purpose was based on a reasonable suspicion that the men had committed the grocery store robbery and did not constitute an unlawful seizure.

1. The "Stone" stop has been codified in Colo. Rev.Stat. § 16–3–103(1):

"A peace officer may stop any person who he reasonably suspects is committing, has committed, or is about to commit a crime and may require him to give his name, address, and an explanation of his actions. The stopping shall not constitute an arrest."

Borrelli argues further that evidence obtained as a result of his subsequent arrest for assisting an escapee is inadmissible because the arrest was without probable cause. Probable cause for an arrest exists where the facts and circumstances known to the police are sufficient in themselves to warrant a prudent officer in the belief that an offense has been or is being committed. *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *People v. Pickett*, 571 P.2d 1078 (Colo.1977). Thus, Borrelli's arrest was valid if the officers' information was sufficient to support a reasonable belief that Borrelli was "harboring"[2] Thorpe. The police had information that Thorpe was residing in Borrelli's apartment. In fact, Borrelli was present in each instance in which Thorpe was observed. In view of this constant companionship, it may reasonably be inferred that Borrelli knew Thorpe was an escapee, particularly since Borrelli was present when Thorpe lied to police during the traffic stop.

We have reviewed the record, and we conclude that the evidence was sufficient to warrant the belief that Borrelli was harboring Thorpe. Therefore, we hold that the arrest was based on probable cause and the evidence obtained therefrom was properly admitted.

## II.

Borrelli argues that the admission of his stepfather's testimony regarding Borrelli's resemblance to the subject of the bank surveillance photograph invaded the province of the jury. Rule 701 of the Federal Rules of Evidence permits lay opinion testimony if it is (1) rationally based on the perception of the witness and (2) helpful to the determination of a fact in issue. The trial court has broad discretion to determine whether a lay witness is qualified under Rule 701 to testify on a matter of opinion. *Randolph v. Collectramatic, Inc.*, 590 F.2d 844 (10th Cir. 1979).

Since Borrelli lived with his stepfather for five years and had moved only a few days prior to the robbery, his stepfather had independent knowledge of Borrelli's appearance both before and at the time of the robbery. *Cf. United States v. Ladd*, 527 F.2d 1341 (5th Cir. 1976) (witness who was independently familiar with defendant's voice was permitted to identify voice on tape). In the seven months between the robbery and trial, Borrelli had significantly altered his appearance by changing his hairstyle and growing a moustache, thereby making it difficult for the jury to compare his appearance in court with the appearance of the man in the bank surveillance photograph. Because Borrelli's stepfather was in a much better position than the jury to give an opinion as to the resemblance between Borrelli at the approximate date of the robbery and the man in the surveillance photograph, this is an instance where the opinion testimony was helpful to the jury in the determination of a fact in issue. Since the testimony was unquestionably rationally based on the perception of the witness, we hold that the trial court did not abuse its discretion by admitting it into evidence. *See United States v. Murray*, 523 F.2d 489 (8th Cir. 1975).

## III.

Finally, Borrelli contends that the photographic array used for initial identification was tainted because the photographs depict persons of differing ethnic backgrounds and substantially diverse appearance so as to render the array improperly suggestive. A pretrial identification by photograph violates due process only if the "procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The different racial heritage of the men depicted in the array is irrelevant where, as here, five of the six men were very similar in appearance. Moreover, it is

---

**2.** Colo.Rev.Stat. § 18–8–201 prohibits the assisting of an escapee. "Assisting" is defined in Colo.Rev.Stat. § 18–8–105(2)(a) to include the act of "harboring" an escapee.

noteworthy that only two of the four tellers who participated in this out-of-court identification procedure selected the photograph of Borrelli as the robber. Consequently, we cannot conclude that Borrelli was unfairly emphasized. *Hill v. Wyrick*, 570 F.2d 748 (8th Cir. 1978), *cert. denied*, 436 U.S. 921, 98 S.Ct. 2272, 56 L.Ed.2d 764 (1978). We hold that the photographic array was not impermissibly suggestive.

Affirmed.