[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-8180
_____

D. C. Docket No. 1:96-CR-158-JEC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CAREY ANTONIO PIERCE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

**(March 6, 1998)**

Before BLACK and BARKETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.

BARKETT, Circuit Judge:

Carey Antonio Pierce appeals his conviction for bank robbery, robbery affecting interstate commerce, and use of a firearm during and in relation to the latter robbery, in violation of 18 U.S.C. §§ 2113(a), 1951, and 924(c), respectively. On appeal, Pierce seeks reversal of his conviction, arguing that the district court erred: (1) in denying his pre-trial motion to sever the bank robbery count from the two remaining counts; (2) in allowing the government to introduce evidence of five prior bank robberies committed by Pierce pursuant to Federal Rule of Evidence 404(b); (3) in allowing the government to introduce lay opinion testimony from Pierce's employer as well as his

probation officer, both of whom identified Pierce as the individual depicted in a still photograph taken from a bank surveillance videotape of the robbery; (4) in admitting evidence of an out-of-court identification of Pierce as the perpetrator of the § 1951 robbery based on an unduly suggestive identification procedure; and (5) in declining to dismiss the bank robbery count of the indictment because of the government's alleged misuse of the grand jury process to obtain discovery from Pierce's alibi witness. Finding no merit to any of these claims, we AFFIRM. Although we find claims (1), (2), (4), and (5) suitable for affirmance without discussion, the issue raised in claim (3) – the admissibility of lay opinion testimony identifying a defendant in surveillance photographs – is a question of first impression for this Circuit. Accordingly, we address that claim below.

**BACKGROUND**

Pierce was charged in a three-count indictment with the February 6, 1996 robbery of a Roswell, Georgia branch of the Tucker Federal Savings Bank (count one); the February 12, 1996 robbery, in the parking lot of another bank, of a restaurant employee en route to deposit the restaurant's receipts from the previous night (count two); and the use of a firearm in connection with the robbery charged in count two (count three). Following a jury trial, Pierce was convicted of all three counts and sentenced to 180 months imprisonment.

### *The February 6th bank robbery*

At Pierce's trial, bank tellers Theresa Putnam and Patricia Batchelor and bank customer Susan Therrel testified concerning the circumstances of the bank robbery and described the robber's physical appearance. Specifically, the witnesses stated that after entering the bank, the robber had placed both hands on the teller counter, vaulted over the counter, demanded money, and ordered everyone to lie down on the floor. The witnesses described the robber as a black male,

approximately six feet tall and weighing 170 to 180 pounds, wearing a baseball cap, sunglasses, a wind-breaker-type jacket, and dark pants, and carrying a blue and white gym or duffel bag as if he had a weapon inside.  Neither Putnam nor Batchelor was able to identify Pierce in a photographic array that included Pierce's photograph; however, Batchelor subsequently identified Pierce at trial. In addition, Putnam, Batchelor, and Therrel testified that certain items seized from Pierce's residence resembled items worn or carried by the robber.  Based on his review of a bank surveillance videotape depicting the robbery, FBI Special Agent Thomas Forgas, an expert examiner of questioned photographic evidence, testified that a pair of sneakers seized from Pierce's home were similar to the sneakers worn by the robber in the videotape.  However, Forgas was unable to positively identify the robber as Pierce.

The government also introduced evidence of five prior robberies of three different Tucker Federal Savings Bank branches committed by Pierce between December 1988 and February 1989, three of which occurred at the same Roswell branch involved in this case.  FBI Special Agent Robert Melnick, who had participated in the investigation of the 1988-89 string of robberies, described Pierce's standard method of operation in committing these robberies:

> [The robber] would announce the fact that a robbery was occurring.  He would soon thereafter vault over the teller counter.  He would tell the tellers to back away from the counter or to get down onto the floor.
> He would then remove money, which he placed in a blue bag, which was similar to a gym type bag or a small duffel bag, which had white handles on it.  He would also keep his hand, one of his hands inside that bag at times, at all times during the robbery and direct it and point it at the tellers, implying that he had some type of a weapon in the bag, although he never did show a weapon.

Melnick further testified that, following his arrest, Pierce told him that he chose to rob Tucker Federal Savings Banks "because they were easy to rob."  In addition, several bank tellers who had

witnessed one or more of the prior robberies testified concerning the circumstances of those offenses.

The government also called two witnesses familiar with Pierce's appearance, both of whom had previously identified Pierce as the individual depicted in a bank surveillance photograph of the robbery. Federal probation officer Beth Hammond testified that she had served as Pierce's supervisor during a period of supervised release imposed as part of his sentence for the prior bank robberies and that, in this capacity, she had met with Pierce ten times during the seven months prior to his arrest for the offenses charged in this case. Hammond further testified that when the FBI agents investigating this case showed her the bank surveillance photograph, she had stated that she was "ninety percent certain that [the robber] was Mr. Pierce." In addition, Freddie Hammonds, Pierce's workplace supervisor during the five- or six-month period prior to his arrest, testified that when shown a bank surveillance photograph by the FBI, he had identified the Pierce as the robber. Finally, inmate Terry Burston testified that Pierce had discussed various aspects of both robberies with him.

### The February 12th robbery of a restaurant employee

The government's primary witness with respect to the offenses charged in counts two and three of the indictment was Kenneth Knowles, the victim of the § 1951 robbery. At trial, Knowles testified that on February 12, 1996, he was robbed at gunpoint in the parking lot of the First Union Bank when he attempted to exit his vehicle in order to deposit funds on behalf of his employer. Knowles positively identified Pierce as his assailant and also stated that he had previously identified Pierce's photograph in a photographic array.

**DISCUSSION**

We address only Pierce's contention that the admission of lay opinion identification testimony from Beth Hammond and Freddie Hammonds was improper under Federal Rules of Evidence 701 and 403.

### Rule 701

Rule 701 permits the admission of opinion testimony from a lay witness only where the witness's opinions are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed. R. Evid. 701. "The ultimate decision as to the admissibility of lay opinion testimony is committed to the sound discretion of the district court and will not be overturned on appeal unless there is a clear abuse of discretion." United States v. Myers, 972 F.2d 1566, 1576-77 (11th Cir. 1992).

The parties do not dispute that the lay opinion identification testimony at issue in this case was "rationally based on the perception of the witness[es]," as both Hammond and Hammonds identified Pierce based on their personal observations of his appearance during their prior contacts with him. Rather, the parties disagree as to whether the identification testimony was "helpful . . . to the determination of a fact in issue."

Asserting that Pierce's appearance had not changed in any way between the bank robbery and trial, and that Pierce was in no way obscured from view in the surveillance photograph, Pierce argues that the lay opinion identification testimony was not helpful because the witnesses were no better equipped than the jury to compare Pierce's appearance at trial with the appearance of the individual depicted in the surveillance photograph. Pierce further contends that Beth Hammond's identification testimony was not helpful for the additional reason that Hammond herself conceded

-5-

that she could not be one hundred percent certain that the individual in the photograph was Pierce. The government responds that the identification testimony was helpful to the jury because both of the witnesses had a sufficient level of familiarity with Pierce that they were more likely to identify him correctly than was the jury, particularly in light of the grainy quality of the surveillance photograph and the dark glasses and hat worn by the person in the photograph in an effort to disguise his identity. The government also maintains that Beth Hammond's ninety percent level of certainty that the robber depicted in the photographs was Pierce was sufficient to render her opinion helpful to the jury.

Although this court has not previously addressed whether lay opinion testimony identifying a defendant in surveillance photographs is admissible under Rule 701, several other circuits have held such testimony admissible in some circumstances. Because we find, as have most of those circuits, that lay opinion identification testimony may be helpful to the jury where, as here, "there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury," we hold that the district court acted within its discretion in admitting identification testimony from Hammond and Hammonds. United States v. Farnsworth, 729 F.2d 1158, 1160 (8th Cir. 1984); see also United States v. Jackman, 48 F.3d 1, 4-5 (1st Cir. 1995) (holding lay opinion identification testimony admissible "at least when the witness possesses sufficiently relevant familiarity with the defendant that the jury cannot also possess, and when the photographs are not either so unmistakably clear or so hopelessly obscure that the witness is no better-suited than the jury to make the identification"); United States v. Robinson, 804 F.2d 280, 282 (4th Cir. 1986) ("A lay witness may give an opinion concerning the identity of a person depicted in a surveillance photograph if there is some basis for concluding that the witness is more likely to

correctly identify the defendant from the photograph than is the jury." (quoting Farnsworth, 729 F.2d at 1160)); United States v. Towns, 913 F.2d 434, 445 (7th Cir. 1990) (same); United States v. LaPierre, 998 F.2d 1460, 1465 (9th Cir. 1993) (holding lay opinion identification testimony admissible where "there is reason to believe that the witness is more likely to identify correctly the person than is the jury"); United States v. Borrelli, 621 F.2d 1092, 1095 (10th Cir. 1980) (upholding the admission of lay opinion testimony regarding defendant's resemblance to the subject of a bank surveillance photograph where the witness "was in a much better position than the jury to give an opinion as to the resemblance between [defendant] at the approximate date of the robbery and the man in the surveillance photograph").

We agree with our sister courts that whether a particular witness is better suited than the jury correctly to identify a defendant as the individual depicted in surveillance photographs turns on a number of factors. Perhaps most critical to this determination is the witness's level of familiarity with the defendant's appearance. As the Fourth Circuit observed in United States v. Allen, 787 F.2d 933, 936 (4th Cir. 1986), vacated on other grounds, 479 U.S. 1077 (1987):

> testimony by those who knew defendants over a period of time and in a variety of circumstances offers to the jury a perspective it could not acquire in its limited exposure to defendants. Human features develop in the mind's eye over time. These witnesses had interacted with defendants in a way the jury could not, and in natural settings that gave them a greater appreciation of defendants' normal appearance. Thus, their testimony provided the jury with the opinion of those whose exposure was not limited to three days in a sterile courtroom setting.

Accordingly, while familiarity derived from a witness's close relationship to, or substantial and sustained contact with, the defendant weighs heavily in favor of admitting the witness's identification testimony, knowledge of the defendant's appearance based entirely on the witness's "review of photographs of [the defendant] and witnesses' descriptions of him" does not, as it is not

based on anything more than the evidence the jury would have before it at trial. See LaPierre, 998 F.2d at 1465.

Similarly, factors such as the witness's familiarity with the defendant's appearance at the time the surveillance photographs were taken or dressed in a manner similar to the individual depicted in the photographs, and whether the defendant had either disguised his appearance at the time of the offense or altered his appearance prior to trial, would also have some bearing on whether the witness is better able than the jury to make a correct identification. See United States v. Ellis, 121 F.3d 908, 926 (4th Cir. 1997), cert. denied, 118 S. Ct. 738 (1998) (upholding the admission of lay opinion identification testimony by a witness who had known defendant for approximately five years, where defendant had disguised himself with a mask and a hooded sweatshirt at the time of the offense); Towns, 913 F.2d at 445 (upholding identification testimony from defendant's former girlfriend, who had observed defendant's appearance on the day of the bank robbery, where the surveillance photograph depicted the robber "wearing a stocking cap, sunglasses, and a sweatsuit that potentially made him appear heavier than he really was" and where defendant had shaved his moustache off prior to trial); Borrelli, 621 F.2d at 1095 (finding lay opinion identification testimony helpful where witness, defendant's stepfather, "had independent knowledge of [defendant's] appearance both before and at the time of the robber" and defendant "had significantly altered his appearance by changing his hairstyle and growing a moustache").

Because we find that, under the circumstances, "there is some basis for concluding that the witness[es] [are] more likely to correctly identify the defendant from the photograph than is the jury," we hold that the district court acted within its discretion in admitting lay opinion identification testimony from Hammond and Hammonds. The surveillance photograph on which these witnesses

-8-

based their identifications depicted a robber disguised with dark glasses and a baseball hat. In addition, both of the government's identification witnesses had become familiar with Pierce's appearance and, in particular, his facial features through repeated contacts with Pierce over significant periods of time. Beth Hammond had met with Pierce on ten occasions during the seven-month period prior to the robberies charged in this case, some of those meetings taking place in Hammond's office and others occurring at Pierce's home. Freddie Hammonds had served as Pierce's workplace supervisor for the five or six months prior to Pierce's arrest and, during that time, had viewed Pierce wearing sunglasses and a baseball hat, the same items worn by the robber depicted in the photograph. As Pierce suggests, because the surveillance photograph was admitted into evidence, the jury was certainly able to compare Pierce's appearance at trial with the appearance of the individual depicted in the photograph. In view of the disguise worn by the robber pictured in the photograph and the level of familiarity with Pierce's appearance both Hammond and Hammonds possessed, however, we conclude that the lay opinion identification testimony admitted was "helpful . . . to the determination of a fact in issue" within the meaning of Rule 701.

   ***Rule 403***

   Pierce further argues that even if the lay opinion identification testimony was admissible under Rule 701, that testimony should have been excluded pursuant to Rule 403. Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. We review the district court's decision not to exclude evidence pursuant to Rule 403 for an abuse of discretion. United States v. Ross, 33 F.3d 1507, 1524 (11th Cir. 1994).

Pierce contends that the identification testimony admitted was of low probative value because both Hammond and Hammonds were aware of Pierce's prior bank robbery convictions at the time they viewed the surveillance photograph. Pierce also maintains that Beth Hammond's testimony was unfairly prejudicial because, testifying as Pierce's probation officer, Hammond's identification highlighted Pierce's past contact with the criminal justice system.

In upholding the admissibility of lay opinion identification testimony under Rule 701, courts have nevertheless recognized the danger of unfair prejudice that arises when the source of such testimony is a police, probation, or parole officer. See United States v. Calhoun, 544 F.2d 291, 296 (6th Cir. 1976); United States v. Henderson, 68 F.3d 323, 327 (9th Cir. 1995); United States v. Butcher, 557 F.2d 666, 669 (9th Cir. 1977). Identification testimony from law enforcement or corrections personnel may increase the possibility of prejudice to the defendant either by highlighting the defendant's prior contact with the criminal justice system, if the witness's occupation is revealed to the jury, or by effectively constraining defense counsel's ability to undermine the basis for the witness's identification on cross-examination, if the witness's occupation is to remain concealed. See Calhoun, 544 F.2d at 295-96; Farnsworth, 729 F.2d at 1161; Henderson, 68 F.3d at 327. Indeed, concern regarding both types of prejudice has led at least two appellate court to discourage the use of lay opinion identification by policemen and parole officers, unless such persons are the only source of adequate identification testimony. See Farnsworth, 729 F.2d at 1161; Butcher, 557 F.2d at 670.

We share this concern, and, likewise, caution trial courts to admit this kind of identification testimony only in limited and necessary circumstances with all appropriate safeguards. However, in this case we see no abuse of discretion. Although Beth Hammond testified that she knew Pierce

solely in her capacity as his probation officer, Hammond's testimony was neither the only, nor even the primary, source of the jury's information concerning Pierce's prior contact with the criminal justice system. Rather, the jury was otherwise aware of Pierce's criminal history because the government introduced evidence of five previous bank robberies committed by Pierce. Moreover, Pierce has pointed to no unfair prejudice stemming from Freddie Hammonds's identification testimony. In these circumstances, we cannot say that the probative value of the identification testimony presented by the government in this case was substantially outweighed by any unfair prejudice.

AFFIRMED.

BLACK, Circuit Judge, concurring in the result:

I concur in the result in this case.