[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11304
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 1, 2010
JOHN LEY
CLERK

D. C. Docket No. 05-60238-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHAHRAZAD MIR GHOLIKHAN,
a.k.a. Farideh Fahimi,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 1, 2010)

Before TJOFLAT, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Appellant Shahrazad Mir Gholikhan appeals her convictions, following a

jury trial, for committing three offenses involving the sale, or attempted sale, to the government of Iran of military equipment of the United States, to-wit: Generation III Night Vision Goggles ("Goggles").[1] After the district court imposed sentence, concurrent prison terms of sixty-three months each, she took this appeal challenging her convictions.[2] She seeks the vacation of her convictions and the dismissal of the charges under the Double Jeopardy Clause. Alternatively, she seeks a new trial on the grounds that the district court abused its discretion in admitting the lay opinion testimony of a federal agent that the voice on monitored telephone calls was appellant's, and in instructing the jury regarding appellant's prior conviction in Austria.

The charges for which appellant stands convicted stemmed from a Department of Homeland Security investigation of individuals who might be

---

[1] Appellant was convicted of three counts of a seven-count indictment and acquitted on four counts. The convictions were on Count 1, willfully engaging in and attempting to engage in prohibited brokering activities by acting as an agent of the Islamic Republic of Iran in arranging contracts, purchases, sales and transfers of defense articles (Generation III Night Vision Goggles) in return for a fee or other consideration, without first obtaining a license or approval from the United States Department of State, Directorate of Defense Trade Controls, in violation of 22 U.S.C. § 2778, 22 C.F.R. §§ 129.2(a) and (b) and 129.5(b); Count 2, willfully exporting defense articles (the Generation III goggles) from the United States to Iran, without first obtaining a license or approval from the Department of State, Directorate of Defense Trade Controls, in violation of 22 U.S.C. § 2778, 22 C.F.R. §§ 121.1, 123.1, and 127.1; and Count 7, exporting, attempting to export, and re-exporting defense articles from the United States to Iran, in violtion of 50 U.S.C. § 1705 and 31 C.F.R. §§ 560.204 and.205.

[2] Appellant does not question the sufficiency of the evidence to convict.

involved in the illegal sale to Iran of, among other items, equipment designed and manufactured for use by United States military forces. The investigation began in 2002. To ferret out individuals who might be involved in such sales, Immigration and Customs Enforcement used a confidential informant ("CI"), and set up a front business, Gateway Trading Group ("Gateway"), which operated under the direction of Special Agent Ronald Kriske. As the investigation unfolded, several suspects surfaced, including appellant, Hamid Kargar, Mahmoud Seif, Shirin Shahrabi, and Farideh Fahim; they appeared to be working together. Kargar was the first to surface; he emailed the CI stating that he wanted to procure hundreds, and later thousands, of Goggles for the government of Iran. Gateway responded with a fax from "Alex Patrice," the CI, whose gave his email address as GatewayPatrice3@Earthlink.net. The fax was sent to Kargar's fax numbers in Iran and the United Arab Emirates and quoted the price and other specifications for the Goggles. Negotiations between Kargar and the CI regarding the anticipated sale continued in a series of emails and telephone conversations. Agent Kriske monitored the phone conversations between the CI, Kargar and the other suspects as they occurred and instructed the CI on how to respond.

On September 21, 2003, Alex emailed Kargar at

3

HamidKargar@TehranNara.com, requesting a transfer to Gateway's bank account of $9,750 for a sample of the Goggles. Kargar responded with his requests for samples and noted the need to test the equipment in Tehran. The CI subsequently received an email from an individual named Shirin Shahrabi, attaching a letter signed by Mahmoud Seif and instructing Gateway that further communications regarding technical details and negotiations would be handled by Kargar or Ms. Shirin Shahrabi, that arrangments for payments would be handled by a Mr. Shahkhani, but that all orders must be confirmed by a signature from Seif.

Later communications from Kargar, who had been using the corporate name Tehran Nara, informed the CI that "Miss Farideh Fahimi, with the email Address [sic] of F-Fahimi@NoorAlFath.com," would be in contact to coordinate delivery of the sample which had been paid for in the earlier wire transfer. On August 3, 2004, an individual identifying herself as "Farideh" sent an email to GatewayPatrice3@Earthlink.net, addressed to "Mr. Alex," introducing herself as Ms. Farideh Fahimi, an employee of Noor Al Fath, and asking to arrange a time and place for the delivery of the Goggle samples. Farideh followed up this email with a fax asking for an urgent reply. Arrangements were then made for the delivery of the samples in Vienna, Austria.

4

After this, Kargar instructed the CI that further arrangements should be made with Fahimi, directly, at her email address. Thereafter, Fahimi continued the negotiations with the CI over delivery of the samples and the arrangements for the meeting in Vienna. She left several voice-mail messages and followed up with emails and faxes to the CI. On October 18, 2004, Agent Kriske listened in as the CI spoke to "Fahimi" in three recorded telephone conversations, during which she referred to the fax and email correspondence she had had with"Alex." Kriske monitored another call between Fahimi and the CI on October 19, 2004. Fahimi followed this conversation with a fax to "Alex" the next day. Kriske monitored further calls from Fahimi to "Alex" and one occasion, in the CI's absence, she spoke to Kriske, posing as a technical advisor to "Alex." The investigation came to a head after a meeting was arranged; it would take place in Vienna on November 30, 2004. Agent Kriske knew that Fahimi would be traveling with Seif to Vienna for the meeting, so he contacted Austria's Federal Agency for State Protection and Counterterrorism to assist in the investigation. On November 30, Austrian and American officials, acting undercover, met with Seif and the appellant, who identified herself as Farideh Fahimi. At the meeting, the CI, posing as "Alex," identified the Goggles he was prepared to deliver, and Seif and appellant agreed to accept delivery. At the end of the meeting, as Alex

5

showed Seif and appellant the Goggles, uniformed agents arrested them.  The

Goggles transaction violated Austrian law as well as the law of the United States.

Appellant subsequently pled guilty in Austria to the Austrian violation.

Against this background, we address the grounds of appellant's appeal.

We start with the double jeopardy challenge.

## I. Double Jeopardy

Appellant argues that the district court should have granted her motion to

dismiss the indictment because the instant prosecution violates the Double

Jeopardy Clause of the Fifth Amendment.  Further, she contends that the "sham

prosecution exception" to the dual sovereignty doctrine applies here.

"A district court's double jeopardy ruling raises a question of law, which

[we] review[] *de novo*.  When a defendant moves to dismiss an indictment on

double jeopardy grounds, [s]he bears the initial burden of establishing a

nonfrivolous *prima facie* claim" *United States v. Baptista-Rodriguez*, 17 F.3d

1354, 1360 (11th Cir. 1994) (citations ommitted).

The Fifth Amendment provides that no person shall "be subject for the

same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.

"This guarantee protects defendants against successive prosecutions for the same

criminal offense." *Baptista-Rodriguez*, 17 F.3d at 1360.  However, "elementally

identical offenses are nevertheless different for purposes of the Double Jeopardy Clause when they are charged by separate sovereigns. This dual sovereignty doctrine is rooted in the common-law conception of crime as an offense against the sovereignty of a government." *Id.* (citations and quotations omitted).

In *Bartkus v. Illinois,* 359 U.S. 121, 123-24, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959), the Supreme Court noted that the record did not support a claim that the State of Illinois, in bringing its prosecution, was merely a tool of federal authorities or that the state prosecution was a sham. *Baptista-Rodriguez*, 17 F.3d at 1361. "From this language courts have inferred a sham prosecution exception [to dual sovereignty]. To fit within the exception, the defendant must show that one sovereign was so dominated, controlled, or manipulated by the actions of the other that it did not act of its own volition." *Id.* (citations omitted). This court has repeatedly declined to confront the validity of the sham prosecution in those cases where the defendant had failed in any event to demonstrate sham prosecutions. *Id.* "Self-serving conclusions are insufficient to establish a *prima facie* case under a narrow exception to the dual sovereign doctrine." *Id.* at 1362. "Evidence that one sovereign dominated the investigation" may bolster a sham prosecution claim, but "factual allegations [] relating to the investigation alone [are] insufficient to" qualify for the sham prosecution exception to the dual

sovereignty doctrine. *Id.* at 1362 n.7.

The district court committed no error in denying appellant's motion to dismiss the indictment because successive prosecutions by separate sovereigns, such as Austria and the United States, do not violate double jeopardy under the doctrine of dual sovereignty. Further, even if a "sham prosecution" exception to dual sovereignty exists, appellant has not met her burden of establishing that the United States so "dominated, controlled, or manipulated" the Austrian prosecution such that Austria was not acting of its own volition. *Baptista-Rodriguez*, 17 F.3d at 1361.

## II. Lay Witness Opinion Testimony

Appellant argues that the district court abused its discretion in admitting into evidence lay witness opinion testimony, pursuant to Federal Rule of Evidence 701, that identified her voice. Further, she argues that even if the testimony was admissible under Rule 701, the district court should have excluded it as unduly prejudicial under Federal Rule of Evidence 403.

We review evidentiary rulings for abuse of discretion. *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005). The district court abuses its discretion when the "decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Id.* Reversal

8

is not warranted "where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict." *United States v. Arbolaez*, 450 F.3d 1283, 1290 (11th Cir. 2006).

A speaker's voice may be identified by opinion testimony "based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Fed. R. Evid. 901(b)(5). A lay witness's opinion testimony may be admitted if it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Concerning the Rule 701's first prong of the test for admissibility, we have held that "the opinion of a lay witness on a matter is admissible only if it is based on first-hand knowledge or observation." *United States v. Marshall*, 173 F.3d 1312, 1315 (11th Cir. 1999). As to the Rule's second prong, we have held that lay opinion identification testimony was "helpful. . . to the determination of a fact in issue" where there was some basis for concluding that the witness was more likely to correctly identify the defendant from a surveillance photo than the jury. *United States v. Pierce*, 136 F.3d 770, 775 (11th Cir. 1998). In this regard, in *Pierce,* we noted that the witnesses had become familiar with the defendant's appearance and

9

facial features over time. *Id.*

The Federal Rules of Evidence provide that only relevant evidence is admissible. Fed. R. Evid. 402. However, Rule 403 permits the exclusion of evidence if the probative value of that evidence "is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. "[B]ecause it permits a trial court to exclude concededly probative evidence, Rule 403 is an extraordinary remedy which should be used sparingly." *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983). Further, in a criminal trial relevant evidence is inherently prejudicial; therefore, Rule 403 only permits the exclusion of probative evidence when "unfair prejudice substantially outweighs probative value." *Id.* In *Pierce*, we cautioned that "[i]dentification testimony from law enforcement. . . may increase the possibility of prejudice to the defendant [] by highlighting the defendant's prior contact with the criminal justice system, if the witness's occupation is revealed. . ." *Pierce*, 136 F.3d at 776. Nonetheless, the district court does not abuse its discretion in admitting such testimony when the jury is otherwise aware of a defendant's criminal history and the defendant does not identify any unfair prejudice stemming from the admitted testimony. *See id.*

We find no abuse of discretion in the admission of the challenged testimony regarding voice recognition because the testimony was rationally based

10

on the perception of the witness, it was helpful to the jury, and it was not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. Further, the district court's determination that the testimony's prejudicial impact did not substantially outweigh its probative value was not clearly erroneous. *Baker*, 432 F.3d at 1202.

## III. Double Jeopardy Jury Instruction

Appellant argues that the district court erred when, at the government's request, the court instructed the jury that her Austrian conviction did not bar the instant prosecution. She asserts that the instruction prejudiced her because it improperly indicated the court's endorsement or approval of the government's prosecution.

We review the legal correctness of a jury instruction *de novo*, but defer to the district court on questions of phrasing absent an abuse of discretion. *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000) (citations omitted). We find nothing incorrect about the instruction; it reflected the correct legal standard. Nor do we find anything about the court's phrasing of the double jeopardy issue that could be considered confusing.

Appellant's convictions are, accordingly,

AFFIRMED.