**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-10112
Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DERRICK DANARD SLADE,
a.k.a. "D",
a.k.a. Solja,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cr-60107-WPD-2

_____

Before BRASHER, MARCUS, and WILSON, Circuit Judges.

PER CURIAM:

Derrick Slade appeals his convictions and total sentence of life imprisonment with five years of supervised release following a jury trial that found him guilty of ten counts of conviction, arising from his involvement in the "Onsight" criminal gang. These counts included: conspiracy to conduct the affairs of an enterprise through racketeering activity, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d) (Count One); conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count Two); conspiracy to use and carry a firearm during and in relation to a crime of violence, and possess a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(o) (Count Three); substantive Hobbs Act robbery occurring on or about November 3, 2015, in violation of 18 U.S.C. § 1951(a) (Count Six); discharge of a firearm during the November 3 robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Seven); causing the death of a person through the use of a firearm in the course of the November 3 robbery, in violation of 18 U.S.C. § 924(j)(1) (Count Eight); substantive Hobbs Act robbery occurring on or about November 4, 2015, in violation of 18 U.S.C. § 1951(a) (Count Nine); discharge of a firearm during the November 4 robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Ten); substantive Hobbs Act robbery occurring on or about November 25, 2015, in violation of 18 U.S.C. § 1951(a) (Count Twelve); and using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, the November 25 robbery, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Thirteen).

On appeal, Slade argues that: (1) the district court abused its discretion by admitting into evidence certain law enforcement officers' testimony and a summary of a forensic firearm examination report; (2) a police officer gave improper testimony about a separate case when explaining the context for a traffic stop that resulted in Slade's arrest; (3) the court abused its discretion in refusing to let Slade ask a codefendant during cross-examination if his plea agreement required him to testify against Slade; and (4) the court erred in pronouncing the discretionary conditions of his supervised release.  After careful review, we affirm.

## I.

When evidentiary objections are properly preserved, we "review the district court's evidentiary decisions only for a clear abuse of discretion." *United States v. Novaton*, 271 F.3d 968, 1005 (11th Cir. 2001).  Thus, the admission of lay opinion testimony "will not be overturned on appeal unless there is clear abuse of discretion." *United States v. Myers*, 972 F.2d 1566, 1576–77 (11th Cir. 1992).  A district court does not abuse its discretion "where it reached the correct result even if it did so for the wrong reason." *United States v. Samaniego*, 345 F.3d 1280, 1283 (11th Cir. 2003).  Similarly, "the failure of the district court to supply an explanation for an evidentiary exclusion is not grounds for reversal." *United States v. Maurya*, 25 F.4th 829, 839 (11th Cir. 2022).

Evidentiary rulings not objected to below are reviewed only for plain error. *United States v. Graham*, 981 F.3d 1254, 1260 (11th Cir. 2020).  The Federal Rules of Evidence provide that, to preserve

an evidentiary error, a party must timely object and state the specific ground of his objection, but he need not renew an objection once it has been definitively ruled upon. Fed. R. Evid. 103(a)(1), (b). "To preserve an issue for appeal, a party must object in a way that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought." *United States v. Beach*, 80 F.4th 1245, 1254 (11th Cir. 2023) (citation modified). Plain error requires a defendant to establish (1) an error, (2) that is plain, and (3) that has affected the defendant's substantial rights. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). If all three conditions are met, we may exercise our discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id*.

We will not reverse an evidentiary ruling if it amounted to harmless error. *United States v. Barton*, 909 F.3d 1323, 1337 (11th Cir. 2018). Thus, reversal is not required "if the purported error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." *United States v. Fortenberry*, 971 F.2d 717, 722 (11th Cir. 1992).

When a defendant challenges a condition of supervised release included in the judgment but not pronounced orally at sentencing, we review de novo. *United States v. Rodriguez*, 75 F.4th 1231, 1246 n.5 (11th Cir. 2023). However, where a district court announces that some "standard conditions" of supervised release will be applied, specifies none of them, solicits general objections,

and a defendant fails to object that the district court did not describe each condition with particularity, we review only for plain error. *United States v. Hayden*, 119 F.4th 832, 838 (11th Cir. 2024).

## II.

First, we are unpersuaded by Slade's claim that the district court abused its discretion by admitting into evidence certain officers' testimony. Lay witnesses may give opinion testimony only if it "is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Lay opinion testimony identifying the defendant in photographs or videos is deemed "helpful to the jury where . . . 'there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury.'" *United States v. Pierce*, 136 F.3d 770, 774 (11th Cir. 1998).

This determination is to be made based on a multi-factor analysis, with the most important factor being "the witness's level of familiarity with the defendant's appearance." *Id.* Another factor is the basis for the witness's familiarity:

> [W]hile familiarity derived from a witness's close relationship to, or substantial and sustained contact with, the defendant weighs heavily in favor of admitting the witness's identification testimony, knowledge of the defendant's appearance based entirely on the witness's "review of photographs of [the defendant] and witnesses' descriptions of him" does not, as it is

> not based on anything more than the evidence the jury would have before it at trial.

*Id.* Other factors include whether: (1) the witness is familiar with the defendant's appearance at the time of the photograph; (2) the witness is familiar with the defendant's appearance while dressed as in the picture; (3) the defendant was in disguise during the offense; and (4) the defendant's appearance had changed between the time of the offense and trial. *Id.* at 774–75.

Thus, in *Pierce*, we held that lay opinion testimony identifying the defendant in photographs was admissible because: (1) the defendant was disguised in the picture; (2) the first witness testifying had met the defendant ten times over the course of seven months, in a variety of settings; and (3) the second witness had been the defendant's supervisor for nearly half a year, and had seen the defendant wearing similar items as were used in the disguise. *Id.* at 775–76. Similarly, in *United States v. Ware*, we held that lay opinion testimony identifying the defendant in photographs was admissible because: (1) both witnesses had seen the defendant in person when he was arrested; (2) one witness had spent about an hour with the defendant, and the other had spent four hours with him; (3) both witnesses had refamiliarized themselves with the defendant's appearance before trial; and (4) two years had passed between the time the pictures were taken and trial, when the defendant "had grown his hair out, gained a little weight, and presumably looked two years older." 69 F.4th 830, 850–51 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 1395 (2024).

Here, Slade argues that the district court abused its discretion by admitting testimony from Matthew Goodnow, a police officer with the Broward County Sheriff's Office, who identified Slade and codefendant Marcello Gordon in a video of one of the crimes, and testimony from Jessica Box, a Federal Bureau of Investigation special agent, who identified a jacket worn by Slade in the video. Slade claims the testimony was unhelpful to the jury. We disagree.

First, the court did not abuse its discretion in allowing the admission of Officer Goodnow's identification of codefendant Gordon in a video of the home invasion and attempted murder of Cory Billings, a heroin dealer in Hollywood, Florida. As Goodnow testified, he'd had a prolonged in-person interaction with Gordon while attempting a traffic stop and questioning him over an abandoned car and telephone, which is an experience a jury could not have had. Moreover, any error would have been harmless because when Gordon identified *himself* in the video, Slade did not object, so the jury would have known Gordon was in the video without Goodnow's testimony. Thus, Slade has not shown that any error in admitting Goodnow's identification would have affected the outcome of the case.

Nor did the court abuse its discretion in allowing the admission of Officer Goodnow's identification of Slade in the Billings video. As the record reflects, Goodnow had seen Slade three times, for long periods, where he was making direct and consistent eye contact while arresting Slade and requesting that he drop his weapon, and he reviewed videos and photographs from Slade's

social media, which is an experience a jury could not have. Regardless, any error would have been harmless because codefendants Gordon and Eric Hunter previously identified Slade in the Billings video; as a result, the jury already had evidence that Slade was in the video.

Lastly, the court did not abuse its discretion in allowing the admission of Special Agent Box's identification of Slade's jacket in the Billings video. Box had been involved with the case for five years, had reviewed thousands of police reports, social media accounts, and the Billings video, which is an experience that a jury could not have had. Plus, any error would have been harmless because, as we've noted, codefendants Gordon and Hunter had already identified Slade in the Billings video and because Gordon testified that Slade was wearing a leather jacket in the Billings video. Consequently, the jury already had evidence that Slade was wearing a leather jacket in the video. We affirm as to this issue.

## III.

Nor are we convinced that the court abused its discretion by admitting a summary of a forensic firearm examination report. Under the Federal Rules of Evidence, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Thus, "'prosecutors should not permit investigators to give overview testimony, in which a government witness testifies about the results of a criminal investigation'" without an explanation of how the investigator gained personal knowledge of that

aspect of the investigation. *United States v. Khan*, 794 F.3d 1288, 1300 (11th Cir. 2015). Similarly, lay witnesses can testify to the contents of documents they reviewed, even if they did not participate in the activity underlying the documents. *United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011). Further, Rule 1006 allows the use of "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006; *Curtis v. Perkins (In re Int'l Mgmt. Assocs., LLC)*, 781 F.3d 1262, 1266 (11th Cir. 2015).

Here, Slade did not object to the introduction of a summary of a forensic firearm examination report, so we review for plain error and can find none. Indeed, both the government and Slade agree that the district court did not commit plain error. In fact, the court did not commit any error, plain or otherwise, by admitting the summary exhibit into evidence because it was admissible under Federal Rule of Evidence 1006 as a summary of the ballistics evidence that had already been introduced. Fed. R. Evid. 1006. We affirm as to this issue as well.

## IV.

We also find no merit to Slade's argument that Justin Colon, a police officer with the Broward County Sheriff's Office, gave improper testimony at trial about a separate case when explaining the context for a traffic stop during which Slade was apprehended. It is well settled that only evidence that makes some material fact more or less probable may be admitted. Fed. R. Evid. 401, 402. The credibility of witnesses is always relevant, since "[a] successful

showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." *United States v. Abel*, 469 U.S. 45, 51 (1984).

Here, Slade challenges the admission of testimony from Officer Colon that on the day he witnessed Slade conducting a drug transaction and arrested him, Colon was in the area in an unmarked vehicle because later in the day he had to install a GPS tracker on a car in an unrelated case and decided to patrol a high-crime area until it was time to install the tracker. But the district court did not abuse its discretion in admitting this contextual evidence from Officer Colon because the reason for the officer's presence in the area was an integral and natural part of the traffic stop. In addition, the testimony helped explain why Colon was in an unmarked police car, which allowed him to observe the drug transaction without being detected. In any event, any error in admitting evidence about installing the tracker or the neighborhood would have been harmless because it had no substantial influence on the trial's outcome, especially since Officer Colon made it clear that his presence in the area was unrelated to Slade's case.

## V.

Next, we are unconvinced by Slade's claim that the court abused its discretion in refusing to let Slade ask a co-conspirator on cross-examination if his plea agreement required him to testify against Slade. Notably, Sixth Amendment Confrontation Clause violations are subject to the harmless error doctrine. *Delaware v.*

*Van Arsdall*, 475 U.S. 673, 684 (1986). The proper inquiry is whether, assuming the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless find the error was harmless beyond a reasonable doubt. *Id.* Relevant factors to consider are: (1) the importance of the witness's testimony to the prosecution's case; (2) whether the evidence is cumulative; (3) the presence or absence of testimony corroborating or contradicting the witness's on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *United States v. Maxwell*, 579 F.3d 1282, 1298–99 (11th Cir. 2009). A district court's discretion in ruling on the admissibility of evidence "is somewhat narrower where the district court limits a defendant's right to cross-examine witnesses against him." *United States v. Lankford*, 955 F.2d 1545, 1548 (11th Cir. 1992).

The right to cross-examine prosecution witnesses is a component of the right of confrontation. *Id.* "In particular, the exposure of a witness'[s] motivation in testifying has been labelled by the Supreme Court as an important function of the Sixth Amendment right to cross-examination." *Id.* Thus, we've held that a district court abused its discretion in forbidding cross-examination as to the arrest of a prosecution-witness's sons on marijuana charges because the witness might have been testifying in the hope of avoiding federal law enforcement from opening an investigation into his sons or obtaining federal assistance in his sons' case. *Id.* at 1549.

Here, Slade claims the district court erred when it sustained the government's objection to Slade's question that asked coconspirator Joshua Glaze about his plea agreement -- in particular, to Slade's question that: "one of the things that's part of your agreement that you have to do is if they ask you to come and testify against Derrick Slade, you can't refuse; right?" Even if that decision amounted to error, and we believe the district court should have allowed the question to be put because it went directly to the witness's credibility, any error was harmless. For starters, Slade had a full and fair opportunity to cross-examine Glaze and his motive for testifying. Slade's attorney asked Glaze whether the police told Glaze that if he cooperated, the government would ask for a lesser sentence; whether the government had a right to evaluate the nature and extent of Glaze's cooperation and then ask the court at the time of sentence to possibly lower his sentence; whether, when Glaze was sentenced, the government could request that the court consider Glaze's cooperation; and whether Glaze understood there was still a possibility that the government could request that the court further reduce his sentence. Glaze answered these questions. Moreover, there was testimony about all the codefendants' plea agreements and their reasons for testifying in Slade's trial.

It's also worth noting that the government presented overwhelming evidence of Slade's guilt in the ten counts of conviction, which involved RICO and Hobbs Act conspiracies, three substantive Hobbs Act robberies, and various gun charges. This included testimony from numerous coconspirators that placed Slade in the planning stages and armed at the three charged robberies; video of

Slade at the Billings robbery and attempted murder; and testimony from Slade's arresting officer about witnessing Slade's commission of a drug transaction and then watching Slade flee on foot after he was handcuffed.  On this ample record, we are convinced that the district court's error was harmless and we affirm on this issue too.

## VI.

Finally, we are unpersuaded by Slade's claim that the district court erred in pronouncing the discretionary conditions of his supervised release.  "When the oral pronouncement of a sentence varies from the written judgment, the oral pronouncement governs." *United States v. Chavez*, 204 F.3d 1305, 1316 (11th Cir. 2000). If we determine that the oral and written conditions of supervised release "unambiguously conflict[]," the oral pronouncement governs, and we will remand for the limited purpose of correcting the written judgment to be in line with the oral pronouncement. *United States v. Bates*, 213 F.3d 1336, 1340 (11th Cir. 2000).

To satisfy the Fifth Amendment's Due Process Clause, "the district court must pronounce the sentence, 'giving the defendant notice of the sentence and an opportunity to object.'" *Rodriguez*, 75 F.4th at 1247.  "Due process concerns arise when a district court's in-court pronouncement of a sentence differs from the judgment that the court later enters." *Id.*  Accordingly, "a district court must pronounce at the defendant's sentencing hearing any discretionary conditions of supervised release." *Id.* at 1246.  This can be accomplished by referencing an established list of conditions, e.g., from a standing order or the defendant's presentence

investigation report (PSI). *Id.* No error occurs under *Rodriguez* where the district court informs the defendant that they "would have to comply with 'the mandatory and standard conditions adopted by the Court'" during their term of supervised release and the conditions elaborated in the written judgment "are listed in the publicly available judgment form and track the standard conditions of supervised release in the relevant sentencing guideline." *Hayden*, 119 F.4th at 838–39.

Here, plain error review applies because when the district court orally announced it was imposing three discretionary conditions of supervised release -- referencing the three conditions listed in the PSI, which Slade had reviewed with his attorney, that Slade would: (1) consent to searches by his probation officer of reasonable time and manner; (2) not associate with his codefendants and defendants in related cases; and (3) inform his probation officer of changes in his ability to make restitution -- Slade had an opportunity to object and did not do so. We can find no plain error as to this issue.

At sentencing, the court sufficiently notified Slade that on supervised release he would be required to comply with the standard conditions of supervised release, and listed the three discretionary special conditions of release, including that he pay any unpaid special assessments upon release. Slade argues that the oral pronouncement at sentencing failed to include the condition written in the judgment that "[i]f the defendant has any unpaid amount of restitution, fines, or special assessments, the defendant shall notify

the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay." Importantly, however, the oral pronouncement listed the first two special conditions as detailed in the written judgment and then described the third special condition as ordering that "any unpaid special assessments be paid during the period of the supervised release." Although this last condition was phrased differently, both phrasings indicated that unpaid assessments needed to be paid; the written pronouncement simply offered an option for reducing his payments. Because the oral pronouncement did not rule out this opportunity to reduce his payments -- or otherwise create an "unambiguous" conflict with the discretionary condition listed in the PSI -- the court did not err, or plainly err, in its pronouncement.

Moreover, Slade has not shown that any error would have affected his substantial rights. At issue is whether, if Slade is released from prison on a life sentence, plus 10 consecutive years, and he has not at that time paid the full $1,000 special assessment, he will have to notify his probation officer of a change in his economic circumstances that affects his ability to pay whatever amount is remaining. Slade does not explain how the written condition, even if improperly imposed, harms him. This was especially true since Slade was plainly on notice of it, when it was referenced at the sentencing hearing and included in full in the PSI he reviewed with his attorney. Accordingly, we affirm.

**AFFIRMED.**