306 Ga. 550
FINAL COPY

S19A0683.  GLENN v. THE STATE.

WARREN, Justice.

Calvin Glenn and his co-defendant Delron Glenn were convicted of malice murder, armed robbery, and possession of a firearm during the commission of a felony in connection with the shooting death of John Tanner.[1]  On appeal, Calvin contends that

---

[1] The crimes were committed on February 3, 2015.  On April 28, 2015, a DeKalb County grand jury indicted Calvin, Delron, and Stanley Kitchens for malice murder, two counts of felony murder, aggravated assault, armed robbery, and possession of a firearm during the commission of a felony.  Calvin alone was indicted for possession of a firearm by a convicted felon.  Kitchens pled guilty to voluntary manslaughter and other crimes, and he testified at a joint trial of Calvin and Delron, which was held from August 17 to 21, 2015.  A jury found Calvin and Delron guilty of all counts, except that, at a subsequent bench trial, Calvin was found not guilty of possession of a firearm by a convicted felon.  On August 26, 2015, the trial court sentenced Calvin to concurrent terms of life imprisonment without the possibility of parole for malice murder and armed robbery, and a consecutive term of five years for possession of a firearm during the commission of a felony.  The guilty verdicts for felony murder were vacated by operation of law, and the aggravated-assault verdict was merged into the malice-murder conviction.  Calvin filed a timely motion for new trial on September 22, 2015, which was later amended through new counsel on March 6, 2018.  The amended motion was denied on May 9, 2018, and Calvin filed a timely notice of appeal on May 17, 2018.  The case was docketed in this Court for the April 2019 term and submitted for a decision on the briefs.

the evidence was insufficient to sustain his convictions and that the trial court erred in denying his motion in limine to exclude certain identification evidence. We disagree and affirm.

1. We have already affirmed Delron's convictions. *Glenn v. State*, 302 Ga. 276 (806 SE2d 564) (2017). The opinion in that appeal summarized the evidence presented at Calvin and Delron's joint trial in the light most favorable to the verdicts:

> On February 3, 2015, John Tanner, accompanied by an unknown female, went to an Affordable Inn motel. When he arrived at his room, he encountered Denard Pryor, who was there with another man nicknamed "Black." Tanner left with Pryor to get a laptop out of Tanner's car, which was parked in the motel parking lot. Tanner then moved his car around the corner of the building.
> Meanwhile, [Delron]'s ex-girlfriend, Teneshia Johnson, drove [Delron] to the same Affordable Inn motel. She dropped [Delron] off at the back of the motel, where he met his brother and eventual co-defendant, Calvin Glenn, co-indictee Stanley Kitchens, and another man. When Tanner and Pryor came around the corner in Tanner's car, Pryor recognized the four men standing in the parking lot. Calvin and his entourage, including [Delron], had come to the motel to confront Tanner because Tanner allegedly owed Calvin some money. When Calvin saw Tanner, Calvin became angry and said he was going to "go handle this." [Delron] then asked Calvin to give him a gun.

Tanner was out of his car, with Calvin and [Delron] following him, when the two men began "roughing up" Tanner. Tanner then managed to get back inside his car, but Calvin and [Delron] followed Tanner to his car and proceeded to steal Tanner's briefcase, keys to his home, and an LG MS395 cell phone. During the "roughing up" and the robbery, witnesses heard a gunshot. Calvin and [Delron] then got out of Tanner's car and ran away. [Delron] was spotted with a small silver gun in his hand as he ran. The men dropped a red cell phone and a key ring during their flight.

In response to a 911 call, police arrived at the Affordable Inn shortly after the shot was fired. They found a car that was still running with the door open. Tanner was found unresponsive in the driver's seat. Officers collected a .25 caliber cartridge casing, a number of business cards, a video surveillance recording, and several fingerprints from the crime scene. Officers also noticed that Tanner's cell phone holder was empty and that there was an empty box for an LG MS395 phone in the car's back seat. Tanner died from a single .25 caliber gunshot wound to his abdomen; no firearm connected to that casing or bullet was ever recovered.

The motel manager gave police the video surveillance recording that captured Tanner's last moments. The recording showed Tanner being taken to the ground by two men on the car's left side while two other men ransacked the car from the right side. The manager thought she recognized two of the people in the video, whom she knew by their nicknames "Fat" and "Man." "Fat" was later determined to be Pryor, and "Man" was later determined to be Kitchens. The manager identified Kitchens because he stuck his face into the camera and because he was known to her since he had been banned from motel property. The video also showed

Kitchens and three other men fleeing the parking lot via a "cut path" that led to the Hidden Woods apartments on the other side of the motel. A search of the path turned up the key ring and red cell phone. Police issued a BOLO (be on the lookout) notice describing the suspects; minutes later, Calvin was arrested near the Hidden Woods apartments. The red phone turned out to belong to Calvin.

Six days after the crime, Kitchens was arrested. He admitted to serving as a lookout at the corner of the motel building, but pinned the murder on Calvin and [Delron] despite denying that he ever saw the actual shooting. Kitchens identified the fourth male by the nickname "Red." He told police that Calvin went by the street name "Kirkwood," while [Delron] went by the name "Uzi." Kitchens illuminated a motive: money. Calvin had seen Tanner at a nearby gas station earlier that day and became upset because Tanner owed him money for drugs. Calvin called his brother to meet him and confront Tanner over the money.

Id. at 277-278.

Other evidence implicating Calvin was not part of the summary of evidence in our previous opinion in Delron's appeal: When detectives showed Johnson photographs that were still frames from the video surveillance recording, she recognized Calvin and Delron, as well as Kitchens. When Kitchens viewed the surveillance video before trial, he identified himself, Calvin, Delron, and "Red"

4

as the people next to Tanner's vehicle during the time of the shooting and robbery. And Kitchens told officers that Calvin gave his younger brother, Delron, a gun after pressuring and manipulating him to help "get" the man who owed Calvin some money, and that after Calvin and Delron roughed up Tanner, Calvin and Red forced Tanner to the ground.

2.   Calvin contends that the evidence was insufficient to support his convictions for malice murder, armed robbery, and possession of a firearm. Specifically, he contends that the evidence did not show that he participated in the shooting or the robbery or that he knew his brother was going to shoot or rob Tanner when Calvin gave Delron a gun.[2] We disagree.

"A person who does not directly commit a crime may be convicted upon proof that the crime was committed and that person

---

[2] Calvin also argues that Kitchens's testimony that Calvin had the gun to begin with cannot be believed. That assertion, however, was not part of Kitchens's trial testimony; it was instead part of the statement he made to police and that he later testified was a result of coaching by police. The parties thoroughly addressed these matters during their examination of Kitchens at trial, and whether his testimony or his statement to police was credible was for the jury to decide. See *Terrell v. State*, 300 Ga. 81, 85 (793 SE2d 411) (2016); *Denton v. State*, 286 Ga. 494, 495 (689 SE2d 322) (2010).

was a party to it." *Powell v. State*, 291 Ga. 743, 744 (733 SE2d 294) (2012) (citation and punctuation omitted). Even assuming that Delron, not Calvin, fired the fatal shot, a person who "[i]ntentionally aids or abets in the commission of the crime; or . . . [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime," OCGA § 16-2-20 (b) (3), (4), nonetheless may be convicted as a party to a crime. And "'[w]hile mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense.'" *McGruder v. State*, 303 Ga. 588, 591 (814 SE2d 293) (2018) (citation omitted).

Here, the evidence showed that Calvin and Delron were engaged in a common enterprise at the time of the robbery and shooting. See *Powell*, 291 Ga. at 745. Earlier in the day, Calvin had seen Tanner and become upset because Tanner owed him money. See *Solomon v. State*, 304 Ga. 846, 848 (823 SE2d 265) (2019) (defendant's threats to harm the victim, made earlier on the same

6

day as the crimes, were relevant to show defendant's guilt as a party to the crime of malice murder). The record shows that Calvin instigated the confrontation with Tanner by calling Delron, pressuring and manipulating Delron to help, becoming angry at the motel when he saw Tanner again, and giving a gun to Delron. See id. (defendant's fighting with the victim while defendant's brother was armed with a loaded handgun, which the brother eventually used to shoot the victim, was relevant to show defendant's guilt as a party to the crime of malice murder). In addition, Calvin — who was identified in a motel surveillance video[3] — was one of the men who "rough[ed] up" Tanner and forced him to the ground, and fled with those same men after Tanner was shot, dropping his phone along

---

[3] Citing *Cuyuch v. State*, 284 Ga. 290, 295 (667 SE2d 85) (2008), Calvin insists that this video identification evidence cannot be considered in determining the sufficiency of the evidence because — as he contends in his next enumeration (see Division 3, below) — the identification evidence was erroneously admitted. But it is well established that in determining the legal sufficiency of the evidence, this Court considers all of the evidence admitted, including evidence a party claims was erroneously admitted. See *Kemp v. State*, 303 Ga. 385, 388 (810 SE2d 515) (2018); *Bradshaw v. State*, 296 Ga. 650, 653 (769 SE2d 892) (2015). *Cuyuch* is merely an example of an exception to the general rule for improperly admitted hearsay under Georgia's old Evidence Code — an exception that is no longer relevant under our new Evidence Code, which applied to Calvin's trial. See *Bradshaw*, 296 Ga. at 653 n.2.

the way.  See id.; *McGruder*, 303 Ga. at 591; *Powell*, 291 Ga. at 745. Moreover, Calvin and Delron "are brothers, and this Court has found that 'where the crimes involve relatives (with close relationships), slight circumstances can support the inference that the parties colluded.'" *Solomon*, 304 Ga. at 848 (citation omitted).

The jury could thus infer from the evidence admitted at trial that Calvin knew that Delron was going to use the gun that Calvin gave him to rob Tanner, which carried with it the foreseeable risk that Delron would use the gun to shoot and kill Tanner.  See *Kemp v. State*, 303 Ga. 385, 389 (810 SE2d 515) (2018).  As a result, the jury was authorized to conclude, based on Calvin's "conduct before, during, and after the crimes, that he shared his brother's criminal intent."  *Solomon*, 304 Ga. at 848.  The evidence was therefore sufficient to authorize a rational jury to find Calvin guilty beyond a reasonable doubt as a party to the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *Folston v. State*, 294 Ga. 778, 778-779 (755 SE2d 803) (2014) (evidence was sufficient to convict defendant as a party to the

8

crime of malice murder where it showed, among other things, that he gave a revolver to his drug-selling partner, he said "they needed to 'handle' a situation," they looked for and found the victim, who had allegedly stolen drugs and money from defendant, and the partner then shot the victim).

3. Calvin also contends that the trial court erred in denying his motion in limine to exclude statements made by lay witnesses identifying him from the motel surveillance video recording or from still photographs taken from that recording. In the motion, which Delron joined, Calvin argued that the jury would be "capable of determining for themselves whether the person in the video is [the] defendant based on their own observations." At a pre-trial hearing, the trial court denied the motion in limine.[4] As a result, Johnson's testimony confirming her identification of Calvin from a still

---

[4] Calvin asserts that the trial court erroneously determined that the Eleventh Circuit had "unequivocally stated that a lay witness's opinion testimony concerning a video identification is admissible in all cases." His argument is mistaken, however, because the hearing transcript reflects that the trial court "exercise[d its] discretion" and did not misinterpret Eleventh Circuit precedent.

photograph was admitted at trial. Kitchens, however, refused at trial to identify Calvin from the video or to admit that he had previously done so. For the following reasons, the trial court did not abuse its discretion in denying Calvin's motion in limine and allowing lay witness statements into evidence.

Calvin focuses most of his argument on the Georgia and federal precedents he says are applicable to lay witness video identifications under our new Evidence Code. We already set out the applicable law, however, when Delron raised the very same issue in his appeal: Applying OCGA § 24-7-701 (a)[5] — and looking to federal appellate decisions, especially those of the Eleventh Circuit, that construed and applied Federal Rule of Evidence 701 — we held that where there is "some basis for concluding that a witness is more likely to

---

[5] OCGA § 24-7-701 (a) provides:
    If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences shall be limited to those opinions or inferences which are:
        (1) Rationally based on the perception of the witness;
        (2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and
        (3) Not based on scientific, technical, or other specialized knowledge within the scope of Code Section 24-7-702.

correctly identify a defendant as the individual depicted in surveillance photographs, then lay opinion testimony identifying a defendant in surveillance photographs is admissible under Rule 701." *Glenn*, 302 Ga. at 280 (citation and punctuation omitted). And "[u]nder the circumstances of this case, we find no meaningful distinction between lay witness testimony identifying the defendant in either photographs or in video recordings." Id. While "a number of factors may determine if a witness is better suited to identify the defendant," "perhaps the most critical factor to this determination is the witness's level of familiarity with the defendant's appearance." Id. (citation and punctuation omitted).

"In this case," as in Delron's case, "the video recording was of such poor quality that the average juror would not be able to distinguish the faces by themselves." *Glenn*, 302 Ga. at 281. And there was evidence that the witnesses who identified Calvin from the video and photographs were better suited to correctly identify him in that way than the jurors, since the witnesses had known him prior to the crimes and were familiar with his appearance. See id.

11

As in Delron's appeal, therefore, we conclude that the trial court did not abuse its discretion in permitting lay witnesses to identify Calvin as one of the people in the motel surveillance video.

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 19, 2019.
Murder. DeKalb Superior Court. Before Judge Hunter.
*Stanley W. Schoolcraft III*, for appellant.
*Sherry Boston, District Attorney, Harry S. Ruth, Lenny I. Krick, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.