NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: April 19, 2022

S22A0165. DICKEY v. THE STATE.

BOGGS, Presiding Justice.

Appellant Kaovion Dickey challenges his 2020 convictions for malice murder and other crimes in connection with the shooting death of Tony McGowan and the shooting of Mikeem Jackson. Appellant's sole enumeration of error is that the evidence was legally insufficient to support his convictions. However, the evidence was sufficient for the jury to conclude that Appellant was guilty, so we affirm.[1]

---

[1] The crimes occurred on June 13, 2018. On September 4, 2018, a Richmond County grand jury indicted Appellant, Jatavisa Jones, and Phillip Leach for malice murder, felony murder, attempted armed robbery, aggravated assault with a deadly weapon, and two counts of possession of a firearm during the commission of a crime. At a joint trial from November 30 to December 3, 2020, the jury acquitted Appellant of attempted armed robbery but found him guilty of the remaining charges. The jury found Jones guilty on the two firearm possession counts but otherwise acquitted him, and the jury acquitted Leach of all charges. The trial court sentenced Appellant to serve life in prison for

1. Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On the night of June 12 to 13, 2018, Jackson was at McGowan's house playing video games. At around 1:00 a.m., they decided to go get snacks. McGowan borrowed his girlfriend's SUV and drove with Jackson to a gas station and convenience store on East Boundary street in Augusta. When they arrived, three individuals, later identified as Appellant, Jatavisa Jones, and Phillip Leach, were in the parking lot.

Jackson went inside the store and bought snacks and cigarettes. As he exited the store with a cigarette in hand, he heard someone ask for a light. Jackson walked over to Appellant, Jones, and Leach and pulled out his lighter. Some money fell out of Jackson's pocket, and after handing over the lighter, he bent down to pick it up. As he stood back up, Jones grabbed him forcefully by

malice murder, a consecutive term of ten years for aggravated assault, and a total of ten years' probation for the two firearm possession convictions; the felony murder verdict was vacated by operation of law. On December 15, 2020, Appellant filed a motion for new trial, which he amended through new counsel on June 17, 2021. After a hearing, the trial court denied the motion on July 14, 2021. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the term beginning in December 2021 and submitted for decision on the briefs.

the left shoulder. Jackson turned towards Jones, who pulled a gun out of his right pocket. Jackson, who was unarmed, reached for Jones' gun. A struggle over the gun ensued, and the two men fell to the ground. Appellant and Leach circled around them, "egging [Jones] on," as a man in a truck in the parking lot later described it. Another man, who was inside the store and looking out the window, described the altercation as being "[t]hree on one."

While Jackson was on the ground struggling with Jones, he saw McGowan, who also was unarmed, running over to help. Jackson heard a gunshot, and McGowan fell to the ground. Jackson then managed to get on top of Jones and heard another gunshot, this time closer. As Jackson stood up, he realized that he had been shot in the back. Seeing McGowan lying on the ground, Jackson began running for his life. As Jackson ran from the gas station, he heard a gun jam behind him. He went to his mother's house, and she took him to the hospital. McGowan also was taken to the hospital, where he died. The medical examiner later determined that McGowan died from a gunshot wound to the back.

Jones called 911 to report that he had been involved in a shooting, and when responding officers arrived at the gas station, Jones directed them to two guns lying in the grass behind the convenience store: a Smith & Wesson .40-caliber pistol and a Lorcin .380-caliber pistol in poor condition with the slide locked open. Officers also recovered a .380-caliber cartridge casing and a .25-caliber cartridge casing from the parking lot in front of the store. A GBI firearm examiner later determined that the .380-caliber cartridge casing and the .380-caliber bullet removed from McGowan's body during the autopsy were fired from the Lorcin .380-caliber pistol recovered behind the store.

Investigator April Cody of the Richmond County Sheriff's Office responded to the scene, and recordings that she made of surveillance video from the convenience store were played for the jury at trial. Three of the recordings show the interior of the store from different angles. These recordings show Appellant, Jones, and Leach entering the store together about an hour before the shooting, milling around for a while, sitting at video games at the back of the

4

store, and exiting the store after about ten minutes. A large gun handle can be seen protruding from Jones' right front pocket, and Appellant is holding a cell phone in his hand.

Two other recordings of video from about an hour later show parts of the parking lot in front of the store extending to either end of a row of gas pumps, with a gap in coverage in the middle. These recordings show Appellant and Leach running back and forth across the parking lot while, according to the trial testimony, Jackson and Jones were out of view on the ground struggling over Jones' gun. At first, Appellant can be seen holding a gun, and he appears to be trying to release the slide from where it has jammed. He then crosses to the other side of the parking lot with Leach, raises the gun, points it in the direction of Jackson and Jones, and fires. Several seconds later, Appellant and Leach start running towards Jackson and Jones, and Appellant again raises the gun and fires. In the meantime, Jackson appears from the bottom of the screen on the other side of the parking lot with blood on the back of his shirt, and he runs off towards the right and then out of view. About 15 seconds

5

later, Jones appears from the bottom of the screen with a gun in his hand. Appellant and Leach run up to Jones, and the three of them then walk across the parking lot in the opposite direction from where Jackson went and disappear from view.

Jackson testified at trial and identified Appellant and his two co-defendants as his assailants. Jackson specifically identified Jones as the person with whom he struggled for control of a gun. Sergeant Lucas Grant, the lead investigator on the case, testified that when he arrived at the gas station, he learned that Appellant, Jones, and Leach had been identified as the shooters, and they were being held at the scene in separate patrol units. A couple of hours later, Sergeant Grant separately interviewed Appellant, Jones, and Leach at the Sheriff's Office, and he specifically identified each of them in court. Sergeant Grant testified that he reviewed the recordings of the surveillance video, and he described the video both from his notes and again as the recordings were being played for the jury. Sergeant Grant further testified that through his investigation, he determined that Appellant and Jones lived at the same residence

6

within walking distance of the gas station and that a cell phone recovered from the scene belonged to Appellant.

2.    Appellant's sole enumeration of error is that the evidence was legally insufficient to support his convictions.

> When we consider the sufficiency of the evidence as a matter of federal due process, our review is limited to whether the trial evidence, when viewed in the light most favorable to the verdicts, is sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

*Moore v. State*, 311 Ga. 506, 508 (858 SE2d 676) (2021) (citation and punctuation omitted). We put aside any questions about conflicting evidence, the credibility of the witnesses, or the weight of the evidence, leaving the resolution of such matters to the discretion of the jury. See id. at 509. Moreover, "[w]hen we consider sufficiency, we consider *all* the evidence admitted at trial, regardless of whether the trial court erred in admitting some of that evidence." *Davenport v. State*, 309 Ga. 385, 397 (846 SE2d 83) (2020) (citation omitted;

emphasis in original). See also *McDaniel v. Brown*, 558 U.S. 120, 131 (130 SCt 665, 175 LE2d 582) (2010).

Appellant acknowledges that a shooting occurred at the gas station that resulted in McGowan's death but contends that the evidence was insufficient to show that he was present at the scene of the shooting, much less that he was a participant in it. At trial, however, the surviving victim, Jackson, identified Appellant as one of the three assailants. Sergeant Grant testified that Appellant, Jones, and Leach were at the gas station when he arrived and that they had been identified as the shooters. Sergeant Grant also testified that he separately interviewed Appellant, Jones, and Leach and that he determined through his investigation that Appellant and Jones lived at the same residence within walking distance of the gas station and that a cell phone recovered from the scene belonged to Appellant. Sergeant Grant further testified that he reviewed recordings of surveillance video, which showed Appellant at the convenience store holding a cell phone about an hour before the shooting, firing a gun that then jammed in the direction of McGowan

8

and the surviving victim in the parking lot, and walking away with Jones, who also was holding a gun.[2] The video recordings supporting Sergeant Grant's testimony were played for the jury at trial.

---

[2] Appellant asserts, as part of his challenge to the sufficiency of the evidence, that the trial court erred in allowing Sergeant Grant to identify Appellant in the recordings of the surveillance video and that his trial counsel was constitutionally ineffective in failing to object to this identification testimony. As noted above, however, "[w]hen we consider sufficiency, we consider *all* the evidence admitted at trial, regardless of whether the trial court erred in admitting some of that evidence." *Davenport*, 309 Ga. at 397 (citation omitted; emphasis in original). See also *Glenn v. State*, 306 Ga. 550, 553 (832 SE2d 433) (2019) (rejecting argument that video identification evidence could not be considered in determining the sufficiency of the evidence if the identification evidence was erroneously admitted). Appellant did not list as an enumeration of error the admission of the identification testimony or his trial counsel's failure to object to it, and "he may not make arguments to expand his sole enumeration of error related to the sufficiency of the evidence." *Mims v. State*, 310 Ga. 853, 854 n.2 (854 SE2d 742) (2021). In any event, Appellant's assertions – which are based on two Court of Appeals cases decided under the old Evidence Code, see *Owens v. State*, 317 Ga. App. 821, 832-825 (733 SE2d 16) (2012); *Wright v. State*, 301 Ga. App. 178, 180-181 (687 SE2d 195) (2009) – lack merit. Appellant's trial took place in 2020, so the current Evidence Code applied. Appellant argues that Sergeant Grant's testimony tended only to establish a fact that average jurors could decide thinking for themselves and drawing their own conclusions, but the defendants wore face masks throughout the trial due to the COVID-19 pandemic, whereas Sergeant Grant had the opportunity to see Appellant without a face mask when he interviewed Appellant in June 2018, long before the pandemic started. As a result, Sergeant Grant's testimony identifying Appellant in the recordings of the surveillance video was admissible as lay opinion testimony under OCGA § 24-7-701 (a). See *Glenn*, 306 Ga. at 555 (holding that lay opinion testimony identifying a defendant in a surveillance video is admissible under OCGA § 24-7-701 (a) if there is "'some basis'" to conclude that the witness is more likely than the jury to correctly identify the defendant as the individual depicted in the video (citation omitted)).

Testimony also showed that the bullet that struck McGowan and a shell casing found at the scene matched a gun with the slide locked open that was recovered from behind the convenience store. When properly viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was legally sufficient to support Appellant's convictions, at least as a party to the crimes. See *Jackson,* 443 U.S. at 319. See also OCGA § 16-2-20 (b) (defining parties to a crime); *Shealey v. State,* 308 Ga. 847, 850 (843 SE2d 864) (2020) (explaining that under OCGA § 16-2-20, the jury may infer a common criminal intent from the defendant's presence, companionship, and conduct with another perpetrator before, during, and after the crimes).

*Judgment affirmed. All the Justices concur.*