[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16802

_____

D.C. Docket No. 0:16-cr-60066-BB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARLETTA JASMINE KNOWLES,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 15, 2018)

Before MARTIN, JORDAN and GINSBURG,[*] Circuit Judges.

JORDAN, Circuit Judge:

Marletta Knowles appeals her convictions for the use of an unauthorized access device in violation of 18 U.S.C. § 1029(a)(2) and aggravated identity theft in violation of § 1028A(a)(1). She argues that the district court abused its discretion by excluding lay identification testimony from a defense witness while admitting similar testimony from a government witness. After reviewing the briefs and the record, and with the benefit of oral argument, we agree with Ms. Knowles that the district court erred. We conclude, however, that the error was harmless because the defense presented identification testimony from other witnesses.

**I**

On February 25, 2015, North Miami Beach Detective Craig Caitlin, accompanied by Department of Labor Special Agent William Tippens (who was part of a task force investigating identity theft and other crimes), stopped a Cadillac for having illegally tinted windows. Camelin Desrosiers was driving the Cadillac, and Ms. Knowles was a passenger. During the traffic stop, Ms. Knowles was outside of the car and in view of Agent Tippens for approximately 20 minutes.

A records check revealed that Mr. Desrosiers was on probation for a state fraud offense. After receiving his consent to search the car, Detective Caitlin

---

[*] Honorable Douglas H. Ginsburg, United States Circuit Judge for the District of Columbia Circuit, sitting by designation.

2

found four Publix money orders—each in the amount of $500—and money order receipts in the center console, along with $1,000 in cash in a compartment behind the radio. When asked about the money orders, Ms. Knowles said that they were bought with cash.

Agent Tippens later obtained the surveillance videos from the Publix stores where the money orders were purchased. The videos showed a woman enter each store and purchase the money orders from customer service. The purchases depicted on the videos matched the dates, times, and Publix store numbers reflected on the money orders and money order receipts found in the Cadillac. The money orders were purchased with prepaid debit cards, which were obtained under the names and social security numbers of two individuals whose identities had been stolen.

Following the investigation, a federal grand jury charged Ms. Knowles with the use of unauthorized access devices and aggravated identity theft. She pled not guilty and proceeded to trial.

## A

Prior to trial, Ms. Knowles moved *in limine*, under Federal Rule of Evidence 701, to prohibit the government from eliciting identification testimony from either Officer Caitlin or Agent Tippens regarding the identity of the person depicted in the Publix surveillance videos. Ms. Knowles also gave notice of her intent to rely

on the identification testimony of Robert Wyman, a proposed defense expert who would testify that, in his opinion, the person in the Publix surveillance videos was not Ms. Knowles. Mr. Wyman based his opinion on his two-hour interaction with Ms. Knowles (at which time he took photographs of her at various angles); his review of the videos, which he reduced to still frames; and his comparison of the photographs that he took of Ms. Knowles to the still frames from the videos.

The government opposed Ms. Knowles' motion *in limine*, arguing that the identification testimony of Officer Caitlin and Agent Tippens would be helpful to the jury because they were sufficiently familiar with Ms. Knowles. Specifically, the government argued that Officer Caitlin and Agent Tippens personally observed Ms. Knowles during the traffic stop and compared those observations to the person depicted in the Publix store videos. The government also moved to exclude Mr. Wyman's testimony. It argued that Mr. Wyman was not qualified to testify as either an expert or a lay witness.

At a pre-trial hearing, the district court denied Ms. Knowles' motion *in limine*, finding that the officers' identification testimony was admissible under Rule 701 because it would be helpful to the jury. The district court stated that "[t]he length of time of the interaction between Ms. Knowles and the officer[s] and the breadth of any relationship certainly goes to the weight of the testimony as opposed to its admissibility." D.E. 126 at 15. The district court was satisfied that

4

the officers personally observed Ms. Knowles during the traffic stop and compared the person depicted in the Publix store videos with their personal observation of Ms. Knowles.

The district court then addressed the government's motion to exclude Mr. Wyman's identification testimony.   Ms. Knowles responded that Mr. Wyman should be permitted to testify as a lay witness on the matter of identification under the same circumstances as Agent Tippens:  "[I]f . . .  [Agent Tippens] had only 20 to 30 minutes to observe Ms. Knowles on the side of a road, while cars are passing by, and then render an opinion as to the identity of Ms. Knowles, as contained in the video, then Mr. Wyman should be able to do the same thing after having an opportunity of several hours to identify Ms. Knowles in a controlled setting."  D.E. 126 at 109.  The district court ruled that Mr. Wyman did not qualify as an expert witness and denied Ms. Knowles' request to admit his testimony as a lay witness opinion.  It did not believe Mr. Wyman was "competent [to testify as a lay witness] merely because he was not allowed to testify as an expert[.]" *Id.* at 113–14.

**B**

At trial, over Ms. Knowles' objections, the district court allowed Agent Tippens to offer his lay opinion that Ms. Knowles was the person depicted in the Publix surveillance videos.  Agent Tippens based his opinion on his review of the videos, which he watched frame by frame; his comparison of the individual in the

videos to photographs of Ms. Knowles; and his 20-minute interaction with Ms. Knowles during the traffic stop.

Following the government's case in chief, Ms. Knowles called two of her former co-workers, Chastity Scott and Laura Mehu, to testify in her defense. Ms. Scott testified that she was shown the Publix surveillance videos by a government investigator. She told the investigator that Ms. Knowles was not the person depicted in the videos. Similarly, Ms. Mehu, who worked with Ms. Knowles for two years, testified that Ms. Knowles was not the person who appeared in the videos.

The jury found Ms. Knowles guilty of using an unauthorized device and of aggravated identity theft. The district court sentenced her to a total of 30 months' imprisonment.

## II

We review a district court's rulings regarding the admissibility of lay opinion testimony for abuse of discretion. *See, e.g.*, *United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011). The same standard applies to a district court's exclusion of relevant evidence under Federal Rule of Evidence 403. *See, e.g.*, *United States v. Pierce*, 136 F.3d 770, 775 (11th Cir. 1998). Even where there is error, however, reversal is not automatic. Reversal is not warranted "if the error had no substantial influence on the outcome and sufficient evidence uninfected by

error supports the verdict." *United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 2006) (internal quotation marks omitted).  *See also* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

<strong>III</strong>

Ms. Knowles argues that the district court erred in excluding Mr. Wyman's lay witness identification testimony under Rule 701.  She also contends that the district court erred in admitting similar testimony from Agent Tippens because its probative value was substantially outweighed by the danger of unfair prejudice under Rule 403.  We address the admission of Agent Tippens' testimony first, and then move on to the exclusion of Mr. Wyman's testimony.

<strong>A</strong>

Agent Tippens identified Ms. Knowles as the person in the Publix surveillance videos who purchased the money orders with the prepaid debit cards. He based his opinion on his frame-by-frame review of the surveillance videos, his comparison of the individual in the videos to photographs of Ms. Knowles, and his 20-minute interaction with Ms. Knowles during the traffic stop.

Rule 701 permits a witness to offer lay opinion testimony if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on

scientific, technical, or other specialized knowledge within the scope of Rule 702." We have held that lay witness identification testimony may be helpful to the jury only if there is some basis to conclude that the witness is more likely to correctly identify the defendant from the surveillance video than is the jury. *See Pierce*, 136 F.3d at 774. "Perhaps most critical to this determination is the witness'[ ] level of familiarity with the defendant's appearance." *Id.* Applying this standard in *Pierce*, we affirmed the admission of identification testimony because the witnesses became familiar with the defendant's appearance through repeated contacts over significant periods of time; one witness met with the defendant on 10 occasions during a seven-month period, and the other served as the defendant's supervisor for the five to six months preceding his arrest. *See id.*

Since *Pierce,* we have not had the opportunity to articulate the extent of familiarity necessary for a lay witness' identification testimony to be helpful to the jury. Other circuits, however, have done so. *Compare United States v. Jadlowe*, 628 F.3d 1, 24 (1st Cir. 2010) (an officer who witnessed an individual enter a garage and who created a surveillance videotape that was played at trial was in no better position than the jury to identify the defendant as the person on the video), *and United States v. Fulton*, 837 F.3d 281, 296–99 (3d Cir. 2016) (an agent and an officer should not have given their opinions that a bank surveillance video showed the defendant as the perpetrator, in part because neither had sufficient familiarity

8

with the appearance of the defendant to assist the jury), *with United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005) (a probation officer's contact with the defendant—four times during a two-month period, totaling more than 70 minutes—was sufficient to achieve a level of familiarity that rendered his testimony rationally based and helpful to the jury), *and United States v. Contreras*, 536 F.3d 1167, 1171 (10th Cir. 2008) (a probation officer who met with the defendant for five to ten minutes on multiple occasions had sufficient familiarity to provide identification testimony).

This case does not present us with an opportunity to expand on the standard set out in *Pierce* because Ms. Knowles does not challenge Agent Tippens' testimony under Rule 701. She argues only that it should have been excluded under Rule 403. We therefore assume without deciding that Agent Tippens' level of familiarity with Ms. Knowles was sufficient to satisfy Rule 701 under *Pierce.*

Ms. Knowles maintains that Agent Tippens' testimony was unfairly prejudicial under Rule 403 because he participated in the vehicle stop at which the incriminating money orders were found, and was therefore cloaked with the credibility of a law enforcement official. Ms. Knowles further argues that the prejudice resulting from Agent Tippens' testimony was heightened because the district court excluded the very same type of identification testimony when it was

9

proffered by the defense.  As we explain, we do not find Ms. Knowles' Rule 403 argument convincing.

Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  In *Pierce*, we recognized that a danger of unfair prejudice may arise when the source of identification testimony is a law enforcement official whose familiarity with the defendant was obtained through the defendant's past exposure to the criminal justice system.  *See Pierce*, 136 F.3d at 775–76.  If the witness' occupation is revealed to the jury, such identification testimony may highlight the defendant's prior contact with the criminal justice system.  Or, if the witness' occupation is concealed, it might effectively constrain defense counsel's ability to undermine the basis for the identification testimony on cross-examination.  *Id.*  The concomitant risk is that the jury, uncertain of guilt, may be more willing to convict a person with a criminal record.  *See Old Chief v. United States,* 519 U.S. 172, 181 (1997).  Thus, we cautioned trial courts to admit this type of identification testimony "only in limited and necessary circumstances with all appropriate safeguards."  *Pierce*, 136 F.3d at 776.

Here, Agent Tippens' familiarity with Ms. Knowles was based in part on his observations of her during the traffic stop of the Cadillac, which led to the charges at issue in this case.  Agent Tippens' identification testimony therefore did not

reveal any past or collateral contact by Mr. Knowles with the criminal justice system. We are not aware of any authority that would support Ms. Knowles' argument that a police officer's identification testimony is *ipso facto* unduly prejudicial under Rule 403 because it is cloaked with the credibility of a law enforcement official. And, although we agree that the district court erred in excluding Mr. Wyman's lay identification testimony, we cannot say that it was unduly prejudicial to allow Agent Tippens to provide his identification testimony because Ms. Knowles was permitted to rebut that evidence through two of her former co-workers. In sum, the district court did not abuse its discretion in overruling Ms. Knowles' Rule 403 objection to Agent Tippens' identification testimony. *See Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1290–91 (11th Cir. 2014) (explaining that the abuse of discretion standard implies a range of choices that is particularly broad with respect to Rule 403 determinations).

## B

Ms. Knowles contends that the district court, having denied her motion *in limine* to prohibit identification testimony from Agent Tippens, erroneously excluded Mr. Wyman's lay witness identification testimony. Ms. Knowles asserts that Mr. Wyman had the same level of familiarity with her as did Agent Tippens. The government defends the district court's ruling, arguing that Mr. Wyman

gained his familiarity with Ms. Knowles through his retention as a potential expert, rather than through prior acquaintanceship or during the course of an investigation. Because Mr. Wyman was not qualified to testify as an expert, the government says, the district court properly excluded his lay witness testimony as well. Finally, the government contends that, because cross-examination would have revealed that Mr. Wyman was a proposed and rejected defense expert, his testimony would have misled the jury, and thus was properly excluded under Rule 403.

We are not persuaded by the government's arguments. "[I]n the law, what's sauce for the goose is normally sauce for the gander." *RJR Nabisco Inc. v. European Cmty.*, 136 S. Ct. 2090, 2108 (2016). We have applied this common-sense principle of equal treatment in the context of expert witnesses. *See United States v. Lankford*, 955 F.2d 1545, 1552 (11th Cir. 1992) ("It is an abuse of discretion to exclude the otherwise admissible opinion of a party's expert on a critical issue, while allowing the opinion of his adversary's expert on the same issue.") (internal quotation and citation omitted); *United States v. Gaskell*, 985 F.2d 1056, 1062–64 (11th Cir. 1993) (holding that it was an abuse of discretion to admit the testimony of only one side's expert, where the experts on both sides proffered testimony that was equally reliable); *United States v. Garber*, 607 F.2d 92, 95-97 (5th Cir. 1979) (en banc) (holding that it was error to prevent a defense

12

expert from testifying on willful intent to violate the tax law where a government expert witness was permitted to testify on the same issue).

We see no reason why this principle should not apply to lay witnesses as well. Because the district court concluded that Agent Tippens' level of familiarity with Ms. Knowles was sufficient to satisfy Rule 701, it follows that Mr. Wyman—who spent more time with Ms. Knowles than did Agent Tippens—should also have been permitted to testify as a lay witness on the issue of identification. And at the time the district court excluded Mr. Wyman's testimony, there was no indication that Ms. Knowles would present identification testimony from two former co-workers. So the district court could not have based its ruling on the ground that Mr. Wyman's testimony would be cumulative. *Cf. United States v. Ndiaye*, 434 F.3d 1270, 1287 (11th Cir. 2006) (holding that the district court did not abuse its discretion in limiting the scope of defendant's cross-examination of government agent where testimony would have been cumulative). Under the circumstances, it was an abuse of discretion to exclude Mr. Wyman's testimony.

Mr. Wyman, as the government notes, became familiar with Ms. Knowles in his capacity as a potential expert witness, and the district court did not allow him to testify as an expert. But these facts are not disqualifying under Rule 701. *See* Fed. R. Evid. 701, advisory committee's note to 2000 amendment ("[Rule 701(c)] does not distinguish between expert and lay *witness*, but rather expert and lay

13

*testimony*.").  Indeed, identification testimony that is based on the witness' first-hand observation of the defendant's appearance is the type of evidence contemplated by Rule 701.  *See Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213 (11th Cir. 2003) (explaining that Rule 701(c) does not affect the "prototypical examples of the type of evidence contemplated by the adoption of Rule 701 relating to . . . identity").

We also reject the government's contention that Mr. Wyman's lay identification testimony, even if admissible under Rule 701, was subject to exclusion under Rule 403 because cross-examination would have revealed that the district court rejected Mr. Wyman as a defense expert, thereby confusing the issues and misleading the jury.  Any risk that the jury might have confused Mr. Wyman's direct observations with his unreliable and rejected methods of expert analysis could have been addressed by appropriate cautionary instructions, by questions structured to clarify that the testimony was based on Mr. Wyman's personal observations, and/or by not letting the jury know that Mr. Wyman had been rejected as an expert.

Nonetheless, Ms. Knowles' convictions stand.  The exclusion of Mr. Wyman's testimony was ultimately harmless because the defense presented two former co-workers who testified that Ms. Knowles was not the individual depicted in the Publix surveillance videos.  *See Hands*, 184 F.3d at 1329.  Stated differently,

14

viewed in retrospect, Mr. Wyman's proposed identification testimony would have been cumulative of the co-workers' testimony, and its exclusion did not have a substantial influence on the outcome in this case. *See United States v. Herre*, 930 F.2d 836, 838 (11th Cir. 1991) (holding that the exclusion of a proposed defense witness was not prejudicial because the testimony was cumulative).

## IV

Ms. Knowles has not shown reversible error. We therefore affirm her convictions.

**AFFIRMED.**