307 Ga. 482
FINAL COPY

S19A1017.  BULLARD v. THE STATE.

WARREN, Justice.

Bernard M. Bullard was convicted of malice murder, violation of the Georgia Street Gang Terrorism and Prevention Act, and possession of a firearm during the commission of a felony in connection with the shooting death of John Johnson.[1]  On appeal, Bullard contends that the evidence was insufficient to sustain his

---

[1] The crimes were committed on April 21, 2013.  On October 29, 2013, a Bibb County grand jury indicted Bullard and Markel Devonte Parks for malice murder, felony murder, aggravated assault, possession of a firearm during the commission of a felony, and two violations of the Street Gang Act (charging predicate acts of murder and aggravated assault).  Bullard was tried separately before a jury from March 10 to 14, 2014, and Parks testified at Bullard's trial under a grant of use immunity under OCGA § 24-5-507 (a).  The jury found Bullard guilty of all counts, and on March 20, 2014, the trial court sentenced him to life in prison without the possibility of parole for malice murder and consecutive terms of 15 years for the violation of the Street Gang Act predicated on murder and five years for possession of a firearm during the commission of a felony.  The guilty verdict for felony murder was vacated by operation of law, and the remaining counts were merged for sentencing purposes.  Bullard filed a timely motion for new trial on April 16, 2014, which was later amended through new counsel on December 19, 2018, and again on January 14, 2019.  The amended motion was denied on February 28, 2019, and Bullard filed a timely notice of appeal on March 6, 2019.  The case was docketed in this Court for the August 2019 term and submitted for a decision on the briefs.

convictions and that the trial court erred in denying a special demurrer, a motion to bifurcate the trial, and a motion in limine. Finding no reversible error, we affirm.

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at Bullard's trial showed that he was a member of the East Macon Family gang and that Johnson was a member of the rival Crips gang. The East Macon Family gang was known to operate on the east side of Macon, whereas the Crips gang was known to operate on the west side. In the early morning hours of April 21, 2013, Johnson and four other people rode in two separate vehicles to a house party on the east side of Macon. Three of the people in Johnson's group, including Eric Mason, were also associated with the Crips gang, and the fourth was a member of a different gang.

Johnson and the others did not have directions to the party they intended to attend. They stopped near, and walked toward, a house party that Bullard and Markel Parks were attending. When a large group of people attending the party left, Johnson's group

2

realized they were at the wrong location. Someone leaving the house party said that Johnson's group was not supposed to be there, and one or more people then yelled "squad," which is a term that members of the East Macon Family use to refer to themselves. The members of Johnson's group, who were not armed, ran back to their cars and then heard gunshots. After Mason got into Johnson's car and Johnson started to leave, Mason saw Bullard shoot at Johnson several times, striking him once, and Mason also saw Parks shoot into the air. Mason then got out of Johnson's car and left in the other car with the remaining three people in his group. Johnson later died from a gunshot wound to his head.

A firearm was not recovered at the scene, but a firearms examiner later determined that a single 9mm handgun ejected six of seven shell casings found near Johnson's car and could have fired the fatal 9mm bullet recovered from Johnson. Before trial, Mason told police officers that Bullard shot Johnson. Mason positively identified Bullard from a photo lineup, and his statements to police officers were consistent with respect to identifying Bullard as the

3

person who shot Johnson. At trial, however, Mason testified that he did not know who shot Johnson. But one officer testified that Mason had previously said that members of the East Macon Family had threatened him; members of that gang attended the trial wearing their gang color; Mason testified at one point that he was afraid to testify about who shot Johnson; and during his testimony, Mason admitted to having told officers that Bullard shot Johnson. In addition, Parks admitted at trial to making prior statements to detectives that he saw Bullard shoot Johnson, although Parks also disavowed those statements during the trial.

Bullard contends that the evidence generally was insufficient to support his convictions because the "evidence was vague and ambiguous and conflicting at best," and also argues that the evidence was insufficient to prove a violation of the Street Gang Act. We disagree.

Bullard was charged in the indictment with violating the Street Gang Act in that he, "being associated with East Macon Family, a criminal street gang, did unlawfully conduct or participate

4

in criminal gang activity through the commission of the offense of murder by shooting John Johnson, a rival gang member[,] in the head causing his death . . . ." To prove a violation of the Street Gang Act in this way, the State was required to show that Bullard was, in fact, associated with the East Macon Family, that the East Macon Family was a "criminal street gang," that Bullard committed a predicate act of "criminal gang activity"— namely, the murder of Johnson, and that the commission of the predicate act was intended to further the interests of the East Macon Family. See OCGA §§ 16-15-3 (1) (J), (3); 16-15-4 (a); *Chavers v. State*, 304 Ga. 887, 890 (823 SE2d 283) (2019).

The evidence, viewed in the light most favorable to the verdicts, shows that all of these elements, as well as Bullard's motive for committing the murder,[2] were proved at trial through the testimony of two gang experts and five other witnesses, as well as various

---

[2] "[W]hile evidence of motive for the homicide is always relevant in a murder trial, the State is not required to prove the defendant's motive for killing the victim to sustain a murder conviction, since motive is not an essential element of the crime." *Romer v. State*, 293 Ga. 339, 341 (745 SE2d 637) (2013) (citation and emphasis omitted).

5

photographs and postings on Bullard's social media pages. The evidence showed that the East Macon Family was a criminal street gang that included Bullard and Parks among its members; that Johnson and three others in his group were associated with a rival gang; that they were on East Macon Family "turf" on the night of the shooting; that it broke an "unwritten rule" to be in a different gang's territory; that Bullard's gang status would increase for having participated in a shooting; and that just before the shooting, individuals leaving the house party yelled "squad," a term used by members of the East Macon Family to refer to themselves and found on numerous social media postings of Bullard's.

And although two key eyewitnesses, Mason and Parks, recanted their statements at trial, those statements were nonetheless admitted as prior inconsistent statements. See *Esprit v. State*, 305 Ga. 429, 437 (826 SE2d 7) (2019) (under old and current Evidence Codes, "a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to

6

impeachment purposes") (citing old Evidence Code cases and current OCGA § 24-8-801 (d) (1) (A)) (punctuation omitted). The pretrial statements Mason and Parks made to police therefore "constituted substantive evidence of [Bullard's] guilt by two eyewitnesses, despite their subsequent recantation or equivocation." *Berry v. State*, 268 Ga. 437, 438 (490 SE2d 389) (1997). "[T]he fact that the jury resolved the conflicts in the evidence or credibility of the witnesses adversely to [Bullard] does not render the evidence insufficient." *Jackson v. State*, 306 Ga. 706, 708 (832 SE2d 809) (2019). We therefore conclude that the evidence presented at trial was more than sufficient to authorize a rational jury to find Bullard guilty beyond a reasonable doubt of the violation of the Street Gang Act, as well as for the other crimes for which he was convicted. See *Jackson v. Virginia,* 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Smith v. State*, 306 Ga. 753, 757 (833 SE2d 117) (2019) (affirming conviction for violation of the Street Gang Act where the evidence showed, among other things, that the victim was seeking to establish a permanent drug-dealing business in the area

7

where the defendant's gang operated); *Jackson*, 306 Ga. at 709 (affirming convictions for violation of the Street Gang Act where the evidence showed, among other things, that the victim was a member of a rival gang); *McGruder v. State*, 303 Ga. 588, 592-593 (814 SE2d 293) (2018) (affirming conviction for violation of the Street Gang Act where the evidence showed, among other things, that the defendant's Facebook page showed gang attire and conduct consistent with affiliation with a particular gang, that the defendant could earn status in the gang by committing violent acts, and that the victim had shown disrespect to a gang member's girlfriend).

2. Bullard contends that the trial court erred in denying his special demurrer with respect to Counts 5 and 6 of the indictment, which charged violations of the Street Gang Act.[3] In the trial court,

---

[3] As explained in footnote 1, Bullard was found guilty of two counts of violating the Street Gang Act, but the trial court entered a judgment of conviction and sentence only on Count 5. Because Count 6 was merged, the trial court's ruling on the special demurrer, as well as Bullard's enumeration of error with respect to Count 6, are moot on appeal. See *Hinton v. State*, 280 Ga. 811, 815 (631 SE2d 365) (2006).

Bullard filed a special demurrer asserting that the State failed to allege sufficient information about those counts,[4] arguing that Counts 5 and 6 of the indictment were "imperfect as to form" and that Bullard was "entitled to more information," such as whether the East Macon Family "existed prior to these events," "what was the rival gang" that Johnson was a member of, when Bullard became a member of the East Macon Family, and whether Bullard was "an actual member of that particular gang or was . . . just associated with it."[5] Contending that "those technical defects are fatal to those

---

[4] The special demurrer was filed on December 10, 2013, which was 20 days after Bullard waived formal arraignment and pled not guilty on November 20, 2013. Although OCGA § 17-7-110 requires that a special demurrer be filed within 10 days of arraignment or a waiver thereof, *Allen v. State*, 300 Ga. 500, 503 (796 SE2d 708) (2017), the State did not argue in the trial court that it was untimely, and this Court has held that in those circumstances, the State's "ability to enforce the strictures of OCGA § 17-7-110 on appeal has been waived." *Harrell v. State*, 297 Ga. 884, 886 n.2 (778 SE2d 196) (2015).

[5] Defense counsel also argued that there was no evidence, except from one eyewitness, that Bullard was part of a gang or specifically the East Macon Family. But the presence or absence of any evidence before the trial court was irrelevant to Bullard's special demurrer; the trial court could not look beyond the four corners of the indictment in considering Bullard's demurrer. See *State v. Williams*, 306 Ga. 50, 53 (829 SE2d 117) (2019) ("As a general matter, a demurrer (whether general or special) must allege some flaw on the face of the indictment itself; a demurrer ordinarily cannot rely on extrinsic facts that are not alleged in the indictment.").

counts," Bullard argued that the gang counts contained in the indictment should be "struck" and "re-alleged" or "re-indicted." The trial court ruled, however, that the indictment was "sufficiently technical and correct" and denied the special demurrer. We review a ruling on a special demurrer de novo to determine the legal sufficiency of the allegations in the indictment, see *State v. Mondor*, 306 Ga. 338, 341 (830 SE2d 206) (2019), and conclude that the allegations that Bullard violated the Street Gang Act were legally sufficient to withstand his special demurrer.

Bullard did not file a general demurrer claiming that the indictment failed to allege every essential element of violation of the Street Gang Act. Cf. *Mondor*, 306 Ga. at 340 ("This type of challenge to the sufficiency of an indictment because it fails to set forth all of the essential elements of the charged crime is properly considered a general demurrer." (citation and punctuation omitted)). "An indictment that is not subject to a general demurrer may, however, be subject to a special demurrer, which challenges the specificity of the indictment." *State v. Wyatt*, 295 Ga. 257, 260 (759 SE2d 500)

(2014). By filing a special demurrer, a defendant "claims not that the charge in an indictment is fatally defective and incapable of supporting a conviction (as would be asserted by general demurrer), but rather that the charge is imperfect as to form or that the accused is entitled to more information." *Kimbrough v. State*, 300 Ga. 878, 880-881 (799 SE2d 229) (2017) (citation and punctuation omitted). "The true test of the sufficiency of an indictment to withstand a special demurrer is not whether it could have been made more definite and certain." *Wyatt*, 295 Ga. at 260 (citation and punctuation omitted); see also *Kimbrough*, 300 Ga. at 881 ("an indictment does not have to contain 'every detail of the crime' to withstand a special demurrer" (citation omitted)). Even so, the indictment "must allege the underlying facts with enough detail to sufficiently apprise the defendant of what he must be prepared to meet." *Kimbrough*, 300 Ga. at 881 (citations and punctuation omitted). And "when a court considers whether an indictment is sufficient to withstand a special demurrer, it is useful to remember that a purpose of the indictment is to allow a defendant to prepare

11

[his] defense intelligently." Id. (citation and punctuation omitted).

Here, Count 5 of the indictment specifically alleged the date of the offense, the county where the offense occurred, the gang with which Bullard was associated, that gang's status as a criminal street gang, the predicate act of criminal gang activity, the identity of the victim of that act, and the manner in which that act was done. Such allegations provide enough information that the indictment is not susceptible to a special demurrer. See *Morris v. State*, 340 Ga. App. 295, 302 (797 SE2d 207) (2017). Further details were not required to ensure that Bullard could prepare his defense. See *Kimbrough*, 300 Ga. at 881. In particular, Count 5 "sufficiently alleged that the criminal street gang was in existence and ongoing at the time of the commission of the enumerated offenses," and the indictment was not required "to contain a specific allegation that the gang existed prior to the commission of any of the enumerated offenses, or to include a specific enumerated offense that was committed prior to the commission of any of the enumerated offenses in this case." *Morris*, 340 Ga. App. at 302 (citation and punctuation omitted).

12

Likewise, the indictment was detailed enough for Bullard to prepare his defense without additional information regarding the identity of Johnson's rival gang, the time Bullard became a member of the East Macon Family, and the exact nature of his association with that gang. See *Varner v. State*, 306 Ga. 726, 734 n.5 (832 SE2d 792) (2019) (in an indictment for possession of a firearm by a convicted felon, the absence of a specification of the particular prior felony does not give rise to a special demurrer); *Smith v. State*, 303 Ga. 643, 646-647 (814 SE2d 411) (2018) (murder counts of an indictment — which charged co-indictees with acting in concert to kill the victim by striking her with a hammer and stabbing her with a knife, and provided the date and county of the offense and the identity of the victim in clear terms — were sufficient to withstand a special demurrer even without specifying which defendant used the hammer and which one used the knife); *Wyatt*, 295 Ga. at 261-266 (an indictment for aggravated assault need not specify the manner in which the simple assault was committed, how the defendant used the weapon or object that aggravated the assault, or

what weapon was used if it is unknown, and aggravated battery charge need not specify the manner in which the battery was committed). Because "an indictment does not have to contain 'every detail of the crime' to withstand a special demurrer," *Kimbrough*, 300 Ga. at 881 (citation omitted), and Count 5 contained sufficient detail in any event, the trial court did not err by denying Bullard's special demurrer, and his enumeration therefore fails.

3. Bullard argues that the trial court erred by denying his motion to bifurcate the trial. On the morning of the first day of trial, Bullard filed a motion to bifurcate his trial so that the counts alleging violations of the Street Gang Act would not be tried until after the jury heard and decided the other counts. Bullard argued that proof of his alleged gang affiliation would amount to "improper character evidence" and would be irrelevant and unfairly prejudicial in violation of OCGA § 24-4-403 unless he was first convicted of aggravated assault or murder. The trial court denied the motion to bifurcate and, in its order denying the motion for new trial, concluded that relevant evidence is not inadmissible when it

14

incidentally places the defendant's character in issue, and that the State's gang-related evidence was relevant to Bullard's affiliation with the gang and to Bullard's motive (i.e., Johnson's membership in a rival gang). On appeal, Bullard contends that the trial court erred by failing to bifurcate his trial because the evidence the State offered to prove violations of the Street Gang Act constituted improper character evidence that created a danger of unfair prejudice against him and confused the issues at trial.[6] We disagree.

---

[6] The new Evidence Code applies in this case because Bullard was tried after January 1, 2013. See *Williams v. State*, 302 Ga. 147, 151 n.4 (805 SE2d 873) (2017) ("The new Evidence Code applies in cases tried on or after January 1, 2013."). However, in Bullard's initial brief in this appeal, his counsel erroneously cited a section of the old Evidence Code, former OCGA § 24-9-20 (b), as well as a case decided under the old Evidence Code, *Murray v. State*, 157 Ga. App. 596 (278 SE2d 2) (1981), for the proposition that evidence of a defendant's general bad character is inadmissible, and the presumption of his good character cannot be rebutted unless he first puts his character in issue by other witnesses' or his own testimony. The version of former OCGA § 24-9-20 that counsel relied on was amended in 2005 and has completely changed as a result. See *Coleman v. State*, 286 Ga. 291, 301 n.3 (687 SE2d 427) (2009) ("OCGA § 24-9-20 (b) was amended in 2005 and now provides that a criminal defendant who testifies in his or her own behalf is subject to examination and cross-examination as is any other witness."); *Dixon v. State*, 303 Ga. App. 517, 522 n. 20 (693 SE2d 900) (2010) ("OCGA § 24-9-20 was amended effective July 1, 2005, to eliminate the [previous] language in subsection (b)."). The 2005 version of former OCGA § 24-9-20 (b) was then carried forward as OCGA § 24-5-506 (b) in the current Evidence Code, with the addition of two enumerated exceptions that do not apply here. See *McKoy v. State*, 303 Ga. 327, 331 n.3

15

Generally speaking, bifurcation of trial on the ground that evidence admitted to prove one charge would prejudice the jury in its consideration of other charges is unnecessary if such evidence is legally material to, and independently admissible as proof of, those other charges. *Barnes v. State*, 287 Ga. 423, 426-427 (696 SE2d 629) (2010). Thus, bifurcation was not necessary here if evidence of Bullard's gang affiliation would have been admissible in a separate trial for murder and for the charged offenses other than violations of the Street Gang Act. And "there is no requirement that the State

(812 SE2d 293) (2018). Although this improper use of the old Evidence Code is particularly noteworthy, appellate counsel for *both* parties — in argument on this enumeration and the one addressed in Division 4 — cited outdated case law decided under the old Evidence Code. "[T]his Court has admonished attorneys to identify the applicable evidence code and cite its pertinent provisions and case law interpreting them." *McKinney v. State*, 307 Ga. ___, ___ n.3 (834 SE2d 741) (2019). For this reason, we ordered each party to file "a corrected brief with citations to, and analysis of, the applicable Evidence Code provisions and case law, without expanding on the enumerations of error." The State mostly complied with that order, but Bullard's counsel did not. Bullard's revised brief added some case law that concerned demurrers, but not Georgia's Evidence Code; distinguished a case decided under the new Evidence Code in his argument on bifurcation even though it was more relevant to the motion in limine that we consider in the next division of this opinion; and failed to delete any citations to, or analysis of, old Evidence Code provisions and case law. We take this opportunity to once again remind attorneys who appear before this Court of their obligation to cite applicable authority under the new Evidence Code in cases that were tried on or after January 1, 2013.

16

charge a defendant with violating the prohibition of participation in criminal street gang activity in OCGA § 16-15-4 in order to admit otherwise relevant evidence of gang activity." *Davis v. State*, 301 Ga. 397, 400 (801 SE2d 897) (2017) (citation and punctuation omitted). See also OCGA § 24-4-418 (c).

In that regard, evidence regarding the defendant's gang affiliation is relevant and admissible when it is "intrinsic" to the crimes charged. *Fleming v. State*, 306 Ga. 240, 244 (830 SE2d 129) (2019). Evidence is intrinsic "'when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense.'" Id. at 244 (quoting *Williams v. State*, 302 Ga. 474, 485 (807 SE2d 350) (2017)). For example,

> "evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."

17

Id. at 245 (quoting *Williams*, 302 Ga. at 485-486).

Intrinsic evidence must also satisfy OCGA § 24-4-403 to be admissible. Id. at 245. If it meets these requirements, intrinsic evidence is "admissible 'even if it incidentally places [the defendant's] character at issue.'" *Williams*, 302 Ga. at 486 (citation omitted). It is within the trial court's sound discretion to determine whether to admit intrinsic evidence, *Fleming*, 306 Ga. at 245, and we cannot say that the trial court abused its discretion by denying Bullard's motion to bifurcate the trial here.

Here, Bullard's gang affiliation was relevant and admissible apart from the charges against him under the Street Gang Act because it was probative of, and intrinsic to, all of the crimes charged; it provided context and motive for his shooting of Johnson. Specifically, evidence of Bullard's gang affiliation provided important context that illuminated the reaction of members of the East Macon Family when they discovered Johnson and other members of a rival gang in the East Macon Family's territory. It also provided context for why Bullard and Parks — members of the

18

East Macon Family — pursued Johnson's group, and also supports a motive, insofar as expert testimony at trial established that the shooting of a rival gang member would increase the shooter's gang status. The evidence of Bullard's gang affiliation thus "complete[d] the story of the crime[s]" charged, *Fleming*, 306 Ga. at 244, by enabling the State to explain Bullard's relationship to the members of the two gangs at the scene and his involvement in the confrontation that culminated in Johnson's murder. Because the evidence of Bullard's gang affiliation was intrinsic to all of the crimes charged and not just to violations of the Street Gang Act, its admission could not unfairly prejudice the jury's consideration of the non-Street Gang Act charges, including murder. And "although the evidence may have incidentally placed [his] character at issue, its probative value was not substantially outweighed by the danger of unfair prejudice" or confusion of the issues. *Fleming*, 306 Ga. at 245. Under these circumstances, Bullard suffered no unfair prejudice from evidence being introduced about his gang affiliation that bifurcation could have prevented, and the trial court did not err in

19

denying his motion to bifurcate.  See *Barnes*, 287 Ga. at 426-427.

4.  Bullard contends that the trial court erred by denying his motion in limine, filed on the morning of the first day of trial, to prevent the introduction of, or references to, "the photographs and videos of Mr. Bullard in various settings and with various individuals as well as pictures of other individuals for the likely purpose of suggesting that [Bullard] was involved in illegal gang activity."  Bullard's counsel later clarified that he was specifically concerned about photographs from Facebook that allegedly show gang activity.  The trial court denied the motion in limine as to photographs that were on Bullard's Facebook page.

During trial, Officer Charles Whitaker — who was qualified without objection as a gang expert — testified that he first came in contact with Bullard in 2009 and had been familiar with Bullard's various social media pages since that time.  Multiple photographs from Bullard's Facebook pages were admitted to prove his gang affiliation, and Officer Whitaker described gang-related attire and behavior that he identified in those photographs.  Officer Whitaker

20

also identified Bullard in one of the photographs. On appeal, Bullard argues that allowing a witness to identify him in photographs that, according to the witness, showed gang activity was prejudicial and misleading because the photographs "speak for themselves," and it was for the jury to determine whether Bullard was in fact in the photographs that were admitted to show criminal gang activity. Pretermitting whether Bullard properly objected on this basis, this enumeration fails.

The ordinary way to introduce testimony identifying a person in photographs is to meet the requirements of OCGA § 24-7-701 (a) ("Rule 701 (a)"), which allows "lay witness testimony in the form of opinions or inferences that are rationally based on the witness's perception, helpful to a clear understanding of the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge." *Glenn v. State*, 302 Ga. 276, 279-280 (806 SE2d 564) (2017).[7] We have held that where there is some basis for

---

[7] That rule provides:
    If the witness is not testifying as an expert, the witness's

21

concluding that a witness is more likely than the jury to correctly identify a defendant as an individual depicted in relevant photographs, then lay opinion testimony identifying a defendant in those photographs is admissible under Rule 701 (a). *Glenn v. State*, 306 Ga. 550, 555 (832 SE2d 433) (2019); *Glenn*, 302 Ga. at 280 (citing *United States v. Pierce*, 136 F3d 770, 774 (11th Cir. 1998)). Whether to allow such lay opinion testimony under Rule 701 (a) is a matter for the trial court's sound discretion, see *Glenn*, 306 Ga. at 554-555, and we conclude that the trial court did not abuse its discretion in allowing Officer Whitaker to identify Bullard in the photographs presented at trial.

The State acknowledges Rule 701 (a) but argues that it did not apply because Officer Whitaker was qualified as a gang expert and was not testifying about the photographs as a lay witness. When we

testimony in the form of opinions or inferences shall be limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness;
(2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and
(3) Not based on scientific, technical, or other specialized knowledge within the scope of Code Section 24-7-702.

consider the meaning of Rule 701 (a), however, we look to decisions of the federal appellate courts, especially the United States Supreme Court and the Eleventh Circuit, that have construed and applied Federal Rule of Evidence 701, the model for our Rule 701 (a). See *Glenn*, 306 Ga. at 555; *Glenn*, 302 Ga. at 280. As with the federal rule, nothing in Georgia's Rule 701 (a) prevents a law enforcement officer from being "qualified to provide both lay opinion and expert testimony." *United States v. Feliciano*, 300 Fed. Appx. 795, 801 (11th Cir. 2008) (citing Fed. R. Evid. 701 advisory committee notes to 2000 amendments).[8] And "[l]ay witnesses may draw on their professional experiences to guide their opinions without necessarily being treated as expert witnesses." *United States v. Jeri*, 869 F3d 1247, 1265 (11th Cir. 2017) (citing *United States v. LeCroy*, 441 F3d 914, 927 (11th Cir. 2006)); see also *Handy v. State*, 350 Ga. App. 490, 495 (829 SE2d 635) (2019) (also citing *LeCroy*), disapproved in

---

[8] "[A]lthough Advisory Committee Notes are not binding precedent and cannot change the plain meaning of the law or rules, they are highly persuasive (unlike ordinary legislative history)." *State v. Almanza*, 304 Ga. 553, 559 n.6 (820 SE2d 1) (2018).

part on other grounds, *McClure v. State*, 306 Ga. 856, 864 n.17 (834 SE2d 96) (2019). The "prototypical" examples of the type of evidence contemplated by Rule 701 (a) include lay testimony relating to the appearance of persons and identity. See Fed. R. Evid. 701 advisory committee notes to 2000 amendments.[9] See also *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F3d 1213, 1222 (11th Cir. 2003) (quoting the advisory committee notes); *United States v. Knowles*, 889 F3d 1251, 1258 (11th Cir. 2018) (quoting *Tampa Bay*). Contrary to the State's argument, therefore, Officer Whitaker's identification of Bullard in one photograph should be considered lay opinion testimony.

We therefore evaluate whether that aspect of Officer Whitaker's testimony met the requirements of Rule 701 (a). "While

---

[9] According to those advisory committee notes, the 2000 amendment of Federal Rule 701 was

> not intended to affect the "prototypical examples of the type of evidence contemplated by the adoption of Rule 701 relating to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences."

(Citation and punctuation omitted.)

a number of factors may determine if a witness is better suited to identify the defendant, perhaps the most critical factor to this determination is the witness's level of familiarity with the defendant's appearance." *Glenn*, 306 Ga. at 555 (citation and punctuation omitted). In this case, Officer Whitaker had first come in contact with Bullard years before the crimes charged here — far longer than the jury had to become familiar with Bullard's appearance at trial. And Officer Whitaker continued to gain familiarity with Bullard's appearance from his social media pages during those years. As a result, there is "some basis for concluding" that Officer Whitaker was in a better position to correctly identify Bullard in the photographs than the jurors. See *Glenn*, 306 Ga. at 555; *Glenn*, 302 Ga. at 281; *Pierce*, 136 F3d at 775 (holding that a federal district court acted within its discretion when it admitted lay opinion identification testimony, because, under the circumstances, there was "some basis for concluding" that the witnesses were more likely to correctly identify the defendant from the photograph than was the jury). That Officer Whitaker became familiar with Bullard

in Officer Whitaker's capacity as a law enforcement officer, or even in his capacity as a gang expert, did not prevent him from providing identification testimony as a lay witness. See *Knowles*, 889 F3d at 1258 (the fact that the witness became familiar with the defendant in his capacity as a potential expert witness was "not disqualifying under Rule 701"); *Jeri*, 869 F3d at 1265; 29 Victor J. Gold, Federal Practice and Procedure (Wright & Miller) § 6255 (2d ed., Aug. 2019 update) (lay opinion concerning the identity of a person in a video or photograph "may be helpful where the witness has had more time to study the evidence than the jury").[10] Accordingly, we conclude that the trial court did not abuse its discretion in permitting Officer

---

[10] Moreover, to the extent Bullard argues that Officer Whitaker's identification created a danger of unfair prejudice or misleading the jury, he fails to show that any such danger would have required the extraordinary remedy of excluding the identification under OCGA § 24-4-403 ("Rule 403"). See *Anthony v. State*, 303 Ga. 399, 408 n.15 (811 SE2d 399) (2018); *Pierce*, 136 F3d at 776. Like the Eleventh Circuit, we are "not aware of any authority . . . that a police officer's identification testimony is ipso facto unduly prejudicial under Rule 403 because it is cloaked with the credibility of a law enforcement official." *Knowles*, 889 F3d at 1257. And because Officer Whitaker had already testified as a gang expert about gang conduct he observed on Bullard's social media pages, the single instance of Officer Whitaker's identification of Bullard added little prejudicial or misleading effect to the evidence presented at trial. See id.; *Pierce*, 136 F3d at 776.

Whitaker to identify Bullard in photographs from his social media pages.

*Judgment affirmed. All the Justices concur.*

DECIDED DECEMBER 23, 2019.
Murder. Bibb Superior Court. Before Judge Simms.
*Jonathan P. Waters*, for appellant.
*K. David Cooke, Jr., District Attorney, Jason M. Martin, Shelley T. Milton, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.