**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**December 19, 2023**

# In the Court of Appeals of Georgia

A23A1446. JACCARO CROSS v. THE STATE.

DILLARD, Presiding Judge.

Following a jury trial, Jaccaro Cross was convicted of two counts of armed robbery, two counts of aggravated assault, aggravated battery, battery, simple battery, and two counts of possession of a firearm during the commission of a felony. On appeal, Cross argues the trial court erred in (1) allowing his co-defendant—who pleaded guilty to the foregoing offenses—to identify him in surveillance footage, and (2) denying his motion to strike a different witness's identification testimony. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on February 26, 2019, Janet Martinez was working as a cashier at a restaurant. Around 7:26 p.m., a man—who Martinez recognized as a frequent customer—walked into the restaurant with his face covered in blood, looking like he had been beaten badly. Martinez spoke with the man for a few minutes before calling 911. Then, while speaking with the police, Martinez went outside the restaurant through the back door and observed another man lying on the pavement visibly injured. During the 911 call, Martinez relayed the injured man's report that the first "subject" was an African American man wearing all black, and he fled the scene toward an apartment complex. There was also a second subject with unknown clothing who was armed and fled in the opposite direction.

Once police arrived, a responding officer located both victims and discovered that the victim lying outside the restaurant had been shot in the leg. And during the investigation that ensued, law enforcement obtained surveillance footage from the restaurant and other nearby businesses, including a gas station. Based on comparing the surveillance footage from the gas station and restaurant, law enforcement

---

[1]*See, e.g., Cawthon v. State*, 350 Ga. App. 741, 741 (830 SE2d 270) (2019).

identified two people of interest, and the video showed them enter a dark-colored Chevrolet Cruze with obvious "cosmetic flaws." Officers then placed a be-on-the-lookout call ("BOLO") for the vehicle. Later that day, the police found the vehicle and initiated a traffic stop. When they did so, they discovered Kris Morand, a second individual, and $4,000 in Mexican pesos. Both men were taken to the police station and interviewed; and during his interview, the police discovered blood on Morand's pants.

Upon further investigation, police discovered that Violet McKenzie owned the Chevrolet Cruze; and when they searched the vehicle, the police found a firearm cleaning kit, gun oil, and a bullet that had not been fired. Police also discovered blood inside the vehicle, which was ultimately determined to match the DNA of one of the victims. Subsequently, the police discovered body-camera footage taken when McKenzie was stopped for a traffic violation in her vehicle approximately four months prior to the events in question. The footage showed Cross—who was living with McKenzie and Morand at the time—in the car with McKenzie. Text messages recovered from Morand's phone included one that read, "Yo, don't bring that lick[2]

---

[2] *See State v. Fox*, 868 NW2d 206, 212 (Minn. 2015) (explaining that "lick" is often used as slang for "a theft or robbery"); *see also* Urban Dictionary,

me and Bama hit, not even to Bama." Morand confirmed that he referred to Cross—who had "A" for the "Alabama Crimson Tide" tattooed on his face—by the nickname "Bama."

Thereafter, Cross and Morand were charged, via joint indictment, with the offenses previously noted. But Morand pleaded guilty and testified against Cross during a jury trial. Following trial, Cross was convicted of all charged offenses. Cross later filed a motion for a new trial (which he amended once), but the trial court denied it.[3] This appeal follows.

1. Cross first argues the trial court erred in allowing testimony from Morand identifying him in surveillance footage. We disagree.

The decision of whether to allow lay opinion testimony under OCGA § 701 (a) ("Rule 701 (a)") is a matter within the trial court's "sound discretion."[4] As a result,

---

*https://www.urbandictionary.com/define.php?term=Lick* (Last visited Dec. 18, 2023) (defining the slang use of "lick" as "[a] successful type of theft which results in an acceptable, impressive and rewarding payday for the protagonist").

[3] It appears from the record that neither party sought a hearing on Cross's motion for a new trial.

[4] *Bullard v. State*, 307 Ga. 482, 491 (4) (837 SE2d 348) (2019); *accord Goforth v. State*, 360 Ga. App. 832, 839 (2) (861 SE2d 800) (2021).

we accept the trial court's findings of fact and credibility determinations "unless they are clearly erroneous; but where controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo."[5] With these guiding principles in mind, we turn to Cross's claims of error.

Relevant here, Rule 701 (a) provides:

If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences shall be limited to those opinions or inferences which are:

(1) Rationally based on the perception of the witness;

(2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and

(3) Not based on scientific, technical, or other specialized knowledge within the scope of Code Section 24-7-702.

And our Supreme Court has explained that when "there is some basis for concluding that a witness is more likely than the jury to correctly identify a defendant as an individual depicted in relevant photographs [or video recordings[6]], then lay opinion

---

[5] *Russell v. State*, 309 Ga. 772, 775 (2) (848 SE2d 404) (2020) (punctuation omitted); *accord Thomas v. State*, 308 Ga. 26, 29 (2) (a) (838 SE2d 801) (2020).

[6] *See Glenn v. State*, 302 Ga. 276, 280 (II) (806 SE2d 564) (2017) ("[W]e find no meaningful distinction between lay witness testimony identifying the defendant in either photographs or in video recordings.").

testimony identifying a defendant in those photographs [or video recordings] is admissible under Rule 701 (a)."[7] So, while a number of factors may determine if a witness is "better suited to identify the defendant, perhaps the most critical factor to this determination is the witness's level of familiarity with the defendant's appearance."[8]

---

[7] *Bullard*, 307 Ga. at 491 (4); *accord Goforth*, 360 Ga. App. at 839 (2); *see U.S. v. Knowles*, 889 F3d 1251, 1256 (III) (A) (11th Cir. 2018) ("We have held that lay witness identification testimony may be helpful to the jury only if there is some basis to conclude that the witness is more likely to correctly identify the defendant from the surveillance video than is the jury."); *U.S. v. Pierce*, 136 F3d 770, 774 (11th Cir. 1998) (agreeing with most circuits that "lay opinion identification testimony may be helpful to the jury where . . . there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury" (punctuation omitted)); Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE 336 (8th ed. 2023) ("Numerous [federal] decisions support the right of a lay witness who knows the defendant to identify him on a video of a bank robbery or a convenience store break-in."); Ronald L. Carlson, Edward J. Imwinkelried, Julie Seaman, and The Late Erica Beecher-Monas, EVIDENCE: TEACHING MATERIALS FOR AN AGE OF SCIENCE AND STATUTES 623 (8th Ed. 2018) (noting that, while there is a "heated debate" among courts regarding whether to permit a lay person to identify a defendant in photographs and video recordings, most courts have permitted such testimony depending on the level of familiarity the witness has with the defendant's appearance).

[8] *Bullard*, 307 Ga. at 491 (4) (punctuation omitted); *accord Goforth*, 360 Ga. App. at 839 (2); *see Knowles*, 889 F3d at 1256 (III) (A) (explaining, as to admissibility of lay witness identification testimony under Federal Rule of Evidence 701 (a), "[p]erhaps most critical to this determination is the witness' level of familiarity with the defendant's appearance" (punctuation omitted)).

Here, Cross argues the trial court abused its discretion in permitting Morand to identify him in the restaurant's surveillance footage of the armed robbery because it failed to make a "threshold finding that the images were not clear and that he possessed such unique knowledge so that he was the only one to lend clarity to the images depicted that the jury might otherwise have." But Rule 701 (a)'s criteria for the admission of lay witness identification testimony is clear and makes no mention of any required "threshold findings." And Cross has not provided any other legal authority suggesting the trial court *must* find that images are unclear or blurry or Morand was the "only witness" in a better position than the jury to identify him in the surveillance footage.[9]

Cross further suggests that, under Rule 701 (a), a lay witness can *never* identify a defendant in a video unless the images are blurry or otherwise difficult to interpret and the defendant has some unique physical characteristic. Again, Morand cites no legal authority to support this assertion. In any event, the trial court *did* find that "the

---

[9] To support his assertion that these threshold findings are required, Cross cites only to *Glenn v. State*, 306 Ga. 550 (832 SE2d 433) (2019). And while he lists several factors the trial court considered in *that* case when admitting identification testimony, *Glenn* does not require a trial court to make any particular finding in every case. *See id.* at 554-55 (3).

7

video does not clearly depict the individuals[,] [or] their faces . . . ,]" and our independent review of the video supports this factual finding. Additionally, the person seen in the video had "long dreads" similar to Cross, and he concedes that a unique hairstyle is a physical characteristic that can weigh in favor of the admission of lay witness identification testimony.

Importantly, rather than setting forth specific factors that *must* be present for admission of identification testimony under Rule 701 (a), the Supreme Court of Georgia has held that such lay witness testimony is admissible so long as there is "*some basis* for concluding that a witness is more likely than the jury to correctly identify a defendant as an individual depicted in [a video recording], then lay opinion testimony identifying a defendant in those [video recordings] is admissible under Rule 701 (a)."[10] And again, our Supreme Court has rightly emphasized that "the most *critical* factor to this determination is the witness's level of *familiarity* with the defendant's appearance."[11] Here, Morand committed the crime with Cross, pleaded guilty, and

---

[10] *Bullard*, 307 Ga. at 491 (4) (emphasis supplied); *accord Goforth*, 360 Ga. App. at 839 (2).

[11] *Bullard*, 307 Ga. at 491 (4) (punctuation omitted) (emphasis supplied); *accord Goforth*, 360 Ga. App. at 839 (2).

then testified against him at trial. The two men were friends and *lived together* with McKenzie (Morand's girlfriend) and her children for four or five months immediately prior to the armed robbery. Suffice it to say, Morand was quite familiar with Cross's appearance, and we cannot say the trial court abused its discretion in allowing Morand to identify Cross in the surveillance video.[12]

Nevertheless, Cross argues (as he did below) that, even if the trial court correctly applied Rule 701 (a), Morand is "still a single witness corroborating what no other witness or piece of evidence without Morand corroborating himself could confirm." And Cross correctly notes that OCGA § 24-4-8 provides:

---

[12] *See Bullard*, 307 Ga. at 492-93 (4) (holding that trial court did not abuse its discretion in allowing officer to testify as to defendant's identity in photographs, under OCGA § 24-7-701 (a), given that officer had known defendant for several years); *Glenn*, 302 Ga. at 281 (II) (finding that witnesses, who had known defendant prior to the crime, were in a better position to correctly identify defendant in the video than the jurors and, thus, such testimony was admissible under OCGA § 24-7-701 (a)); *Goforth*, 360 Ga. App. at 839-40 (2) (holding the trial court had some basis for concluding that a confidential informant and detective were in a better position than the jury to correctly identify defendant in photographs and videos when the CI had interacted with the defendant during several drug transactions and had known him for a "long time" and was familiar with him from working on the instant case); *see also Pierce*, 136 F3d at 774 (noting that "familiarity derived from a witness's close relationship to, or substantial and sustained contact with, the defendant *weighs heavily* in favor of admitting the witness's identification testimony . . ." (punctuation omitted) (emphasis supplied)).

The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, *and felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient.* Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.[13]

In this case, there were corroborating circumstances. Specifically, as discussed in Division 2 *infra*, the trial court did not abuse its discretion in admitting McKenzie's identification of the two suspects getting into a Chevrolet Cruze in surveillance footage from a gas station near the crime scene as Morand and Cross.[14] Additionally, text messages sent by Morand discussed committing a crime with "Bama," which was his nickname for Cross. And while the evidence might not be the strongest in the

---

[13] (Emphasis supplied).

[14] As explained in Division 2 *infra*, Cross does not identify the video he refers to in challenging McKenzie's testimony other than stating it was surveillance footage from a Marathon gas station. But it appears from the record she identified him in a video fleeing the crime scene from that gas station with Morand. Of course, "[t]he burden is upon the party alleging error to show it affirmatively in the record." *Bennett v. Quick*, 305 Ga. App. 415, 416 (699 SE2d 539) (2010) (punctuation omitted). So, if we have missed something in the record or misconstrued an argument, "the responsibility rests with appellant's counsel." *Pneumo Abex, LLC v. Long*, 357 Ga. App. 17, 18 n.3 (849 SE2d 746) (2020) (punctuation omitted).

absence of Morand's identification of Cross, if the verdict is "founded on slight evidence of corroboration connecting a defendant with the crime, the verdict is legally sufficient."[15]

2. Next, Cross contends the trial court erred in denying his motion to strike McKenzie's testimony identifying him in the gas station's surveillance videos. Again, we disagree.

As an initial matter, neither Cross nor the State identifies the video footage in the record pertinent to this claim. And while the trial transcript suggests it is contained in State Exhibit 55, that exhibit includes several different video clips. Under such circumstances, this Court is unable to confirm the trial court's determination regarding the quality of the video or anything else about the video that might have made McKenzie's testimony helpful to the jury. Simply put, Cross has failed to show this alleged error affirmatively in the record.[16]

---

[15] *Gilmore v. State*, 315 Ga. App. 85, 91-92 (1) (d) (726 SE2d 584) (2012) (punctuation omitted); *see Stanbury v. State*, 299 Ga. 125, 128 (786 SE2d 672) (2016) ("[I]n felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient to establish a fact and must be supported by the testimony of another witness or by corroborating circumstances." (punctuation omitted)).

[16] *See Zellars v. State*, 314 Ga. App. 88, 89 (1) (723 SE2d 319) (2012) ("A party alleging error carries the burden of showing it affirmatively by the record, and when

Regardless, McKenzie—who was Morand's fiancé—also lived with Cross for several months immediately prior to the attack. And as his roommate, she would certainly be familiar with his appearance. Moreover, like Morand, McKenzie identified Cross by his unique hairstyle. So, given these circumstances, we cannot say the trial court abused its discretion by denying Cross's motion to strike McKenzie's identification testimony.[17]

For all these reasons, we affirm Cross's convictions.

*Judgment affirmed. Rickman and Pipkin, JJ., concur.*

---

that burden is not met, the judgment is assumed to be correct and will be affirmed." (punctuation omitted)); *City of Warner Robins v. Baker*, 255 Ga. App. 601, 602 (1) (a) (565 SE2d 919) (2002) ("When the error is shown only in the appellant's brief and not by the record, we must assume that the trial court's rulings were correct.").

[17] *See supra* note 12.